NEWHOUSE, Patricia, Appellant,

v.

HECKLER, Margaret, Secretary
Department of Health and
Human Services, Appellee.

No. 84–1085.

United States Court of Appeals,
Third Circuit.

Argued Sept. 13, 1984.

Decided Jan. 23, 1985.

Stephen H. Skale (argued), Cavaliere & Skale, P.C., Philadelphia, Pa., for appellant.

Edward S.G. Dennis, Jr., U.S. Atty., Margaret L. Hutchinson, Asst. U.S. Atty., E.D. Pa., Philadelphia, Pa., Beverly Dennis, III, Regional Atty., Philadelphia, Pa., Charlotte Hardnett, Asst. Regional Atty., Washington, D.C. (argued), Dept. of Health and Human Services, for appellee.

Before GIBBONS and GARTH, Circuit Judges, and Rosenn, Senior Circuit Judge.

## OPINION OF THE COURT

GARTH, Circuit Judge:

■ Patricia Newhouse, a disability claimant who contended that her disability benefits were improperly terminated, appealed an order of the district court which granted summary judgment in favor of the Secretary of Health and Human Services. During the pendency of this appeal, Newhouse died. Because her estate claims to have a valid persisting claim if the termination of benefits was improper,[1] Newhouse's intervening death does not moot this appeal. We reverse. 580 F.Supp. 1101.

## I.

Newhouse had a history of chronic thrombophlebitis. On May 5, 1980, she was first found to be disabled due to that disease. In October 1980, she underwent venous bypass surgery to repair damage to her impaired left leg. In the spring of 1982, she was hospitalized because of cardiovascular and associated complaints. Extensive clinical tests, however, failed to reveal significant abnormalities in her condition. In July 1982, the Social Security Administration determined Newhouse's disability was no longer of sufficient severity to prevent gainful activity. Her benefits were terminated in August 1982.

In January 1983, Newhouse was granted a hearing to challenge the termination of her benefits. She attempted to show that substantial evidence as well as another hospitalization (November 1982) confirmed that she was still disabled. The Administrative Law Judge found Newhouse was no longer disabled within the meaning of the Act and refused to reinstate benefits. On May 11, 1983, the Appeals Council affirmed.

Thereafter, in June 1983, Newhouse was hospitalized for seventeen days for possible pulmonary embolus. Diagnostic tests revealed complete obstruction of the deep veins of the left thigh and a positive Homan's sign.[2] Her discharge diagnosis in-

---

1. 42 U.S.C. § 423 provides in pertinent part:

   § 423. Disability insurance benefit payments
   (a) Disability insurance benefits
   (1) Every individual who—
   (A) is insured for disability insurance benefits (as determined under subsection (c)(1) of this section),
   (B) has not attained the retirement age (as defined in section 416 (*l*) of this title),
   (C) has filed application for disability insurance benefits, and
   (D) is under a disability (as defined in subsection (d) of this section)
   shall be entitled to a disability insurance benefit (i) for each month beginning with the first month after his waiting period (as defined in subsection (c)(2) of this section) in which he becomes so entitled to such insurance benefits, or (ii) for each month beginning with the first month during all of which he is under a disability and in which he becomes so entitled to such insurance benefits, but only if he was entitled to disability insurance benefits which terminated, or had a period of disability (as defined in section 416(i) of this title) which ceased, within the 60-month period preceding the first month in which he is under such disability, and ending with the month preceding whichever of the following months is the earliest: the month in which he dies, the month in which he attains retirement age (as defined in section 416 (*l*) of this title), or, subject to subsection (e) of this section, the termination month.
   See also 20 C.F.R. § 404.316 (1984). Under § 423, a disability claimant whose benefits have not been terminated is entitled to receive such benefits through the month preceding the month of his death. Newhouse died in November 1984. Had her benefits not been terminated, Newhouse would have received payment through October 1984. The disputed period of her entitlement thus extends from August 1982, the month in which her benefits ceased, through October 1984.

2. Homan's sign is defined as "discomfort behind the knee on forced dorsiflexion of the foot: a

cluded angina pectoris, resolving phlebitis left leg, chronic coronary insufficiency, and acute superficial phlebitis.

On June 27, 1983, she commenced this action in the district court. She sought a retroactive renewal of her discontinued benefits or, alternatively, a remand for another hearing. The district court determined that substantial evidence supported the Secretary's decision and that new evidence sufficient to satisfy the materiality requirement of 42 U.S.C. § 405(g) was lacking.[3]

On appeal, Newhouse contended that her case should have been remanded to the Secretary for further consideration in light of her June 1983 hospitalization. We agree.

## II.

In reviewing final determinations by the Secretary after an administrative hearing, courts are bound by the Secretary's findings of fact if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g) (Supp. V 1981); 1383(c)(3) (1976); *see also Daring v. Heckler*, 727 F.2d 64, 68 (3d Cir.1984). "Substantial evidence" has been defined as relevant evidence which a reasonable mind might deem adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Daring v. Heckler, supra* at 68.

Absent consideration of Newhouse's June 1983 hospitalization, it cannot be said the Administrative Law Judge erred in finding substantial evidence supported termination of Newhouse's disability benefits. This court has held that "... in a termination proceeding, once the claimant has in-

troduced evidence that his or her condition remains essentially the same as it was at the time of the earlier determination, the claimant is entitled to the benefit of a presumption that his or her condition remains disabling." *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3 Cir.1983). This presumption of a continuing disability in turn imposes on the Secretary the burden of advancing evidence sufficient to rebut or meet the presumption. *Id.* at 1237. As *Kuzmin* states: "Once the burden to come forward has shifted to the Secretary, the Secretary must present evidence that there has been sufficient improvement in the claimant's condition to allow the claimant to undertake gainful activity." *Id.* at 1237.

Newhouse offered evidence adequate to establish her prima facie case under *Kuzmin*. Drs. Fiedler and McNamara, Newhouse's treating physicians, each diagnosed her condition as recurring thrombophlebitis with incompetency of deep venous return. Tr. at 301–03; 305–07. Dr. Fiedler further stated that Newhouse's symptoms were mainly subjective and hard to evaluate by concrete physical evidence of disease. Tr. at 329. These medical reports, as well as Newhouse's own testimony of continued pain, were enough to invoke a presumption of continued disability.

Under *Kuzmin*, therefore, the burden shifted to the Secretary to present evidence of sufficient improvement in Newhouse's condition to allow her to resume gainful activity. The Secretary offered evidence of a consultative examination performed in May 1982 by Dr. Robert Schwab, a cardiovascular specialist. This examination revealed normal cardiac and pulmonary func-

sign of thrombosis in the veins of the calf." Dorland's Medical Dictionary 1416–27 (25th ed. 1974).

**3.** 42 U.S.C. § 405(g) states in pertinent part: The court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is

material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.

tions. A cardiovascular treadmill stress test, administered by Dr. Schwab, indicated Newhouse's exercise capacity was good to excellent. No ischemic changes [4] were noted and the arterial circulation of both legs was deemed very adequate. Dr. Schwab concluded there was no evidence of active phlebitis. Tr. at 324.

■ In light of this conflicting medical evidence, the Administrative Law Judge could reasonably find the lack of clinical data, indicating active phlebitis, outweighed the testimony of Newhouse and her treating physicians. *See Richardson v. Perales, supra* 402 U.S. at 399, 91 S.Ct. at 1426. Nor can it be argued that the Administrative Law Judge failed to consider evidence of Newhouse's multiple hospitalizations prior to June 1983. As the Administrative Law Judge noted, the record of Newhouse's March 1982 hospitalization failed to reveal " . . . any severe abnormal findings with regard to a cardiovascular or peripheral vascular condition" and indicated no swelling or tenderness of her left leg. Tr. at 115. Similarly, the Administrative Law Judge considered Dr. Fiedler's report of Newhouse's November 1982 hospitalization wherein it was stated Newhouse's venous disease was treated with anticoagulants and acute embolism stockings. Tr. at 114. That the Administrative Law Judge ultimately found the absence of clinical tests demonstrating phlebitis to be dispositive is not a conclusion unsupported by relevant evidence of record. We cannot therefore say the Administrative Law Judge erred on the basis of the record before him.

### III.

The determination that there was substantial evidence in the record to support the decision of the Administrative Law Judge does not, however, end our analysis. Newhouse has asserted that had the Secretary considered her June 1983 hospitalization—a hospitalization that occurred twenty-six days after the Appeals Council affirmed the Administrative Law Judge's decision—Newhouse's disability benefits would have been continued rather than terminated. She has therefore alternatively sought remand pursuant to 42 U.S.C. § 405(g) so that this new evidence could be considered by the Secretary.

For a court to order a remand pursuant to 42 U.S.C. § 405(g), a claimant must show "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . ." The language of the present statute results from the 1980 amendments to the Social Security Act. See Pub.L. No. 96–265, Title III, § 307, 94 Stat. 458 (1980). The earlier version of § 405(g) provided that the court could "at any time, on good cause shown, order additional evidence to be taken by the Secretary." 42 U.S.C. § 405(g) (1970). The present version has added the requirement that the evidence be material.[5]

In *Szubak v. Secretary of Health and Human Services*, 745 F.2d 831, 833 (3d

---

**4.** Ischemia is defined as a "deficiency of blood in a part, due to function constriction or actual obstruction of a blood vessel." Dorland's Medical Dictionary 799 (25th ed. 1974).

**5.** Before the revision of section 405(g), the Third Circuit enunciated a "good cause" standard which subsumed a necessary showing of materiality. In *Kane v. Matthews*, 583 F.2d 878 (1978), we stated:

> In deciding whether a case should be remanded, the district court should consider whether the evidence is not cumulative in light of those facts already before the Secretary and whether the Secretary's decision might well have been different had the evidence been

presented to the ALJ. *See Zielinski v. Califano*, 580 F.2d 103 (3d Cir.1978). Also, the court should consider the effect of the claimant's failure to present the evidence in the first instance as well as whether the claimant would be denied a fair hearing if the additional evidence is not made part of the record. The initial *Kane* criteria—that the evidence on remand not be cumulative and that the Secretary's decision might well have been different—require consideration of the relevance and probative value of the proffered new evidence. The *Kane* standard, construing the earlier 405(g), thus largely anticipated the explicit materiality requirement of the present statute.

Cir.1984) (per curiam), this court has recently construed the revised section 405(g):

[1–3] As amended in 1980, § 405(g) now requires that to support a "new evidence" remand, the evidence must first be "new" and not merely cumulative of what is already in the record. *E.g., Bomes v. Schweiker*, 544 F.Supp. 72, 75–76 (D.Mass.1982). Second, the evidence must be "material;" it must be relevant and probative. *E.g., Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir.1981). Beyond that, the materiality standard requires that there be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination. *Id.; see also Bomes*, 544 F.Supp. at 76. An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition. *See Ward v. Schweiker*, 686 F.2d 762, 765 (9th Cir.1982). Finally, the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record. *E.g., Brown v. Schweiker*, 557 F.Supp. 190 at 192 (M.D.Fla.1983).

*Szubak* thus makes clear that the materiality standard of § 405(g) requires "that there be a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination." *Id. See also Booz v. Secretary of Health and Human Services*, 734 F.2d 1378, 1381 (9th Cir.1984); *Dorsey v. Heckler*, 702 F.2d 597, 604–05 (5th Cir.1983); *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir.1981). To secure remand, a claimant must show that new evidence raises a "reasonable possibility" of reversal sufficient to undermine confidence in the prior decision. The burden of such a showing is not great. A "reasonable possibility," while requiring more than a minimal showing, need not meet a preponderance test. Instead, it is adequate if the new evidence is material and there is a reasonable possibility that it is sufficient to warrant a different outcome.[6]

## IV.

Accordingly, we must now determine whether there is a reasonable possibility that evidence of Newhouse's June 1983 hospitalization would have changed the Secretary's decision.[7] We conclude there is such a reasonable possibility.

We recognize that on remand the Secretary will now be obliged to reassess Newhouse's termination of benefits in light of her June 1983 hospitalization. Although Newhouse herself can no longer testify, if the consideration of additional evidence would have precluded termination of Newhouse's benefits, then any improperly terminated benefits may accrue to her estate.

The Administrative Law Judge predicated his decision upon an absence of clinical data to support Newhouse's claim of continued disability. Had the record of Newhouse's June 1983 hospitalization been before the Secretary, there is a reasonable possibility that evidence of completely obstructed veins in the left thigh as well as evidence of a positive Homan's sign might well have supplied the very clinical data the Administrative Law Judge found wanting. The district court erred when it concluded the new evidence failed to create such a reasonable possibility. As we have stated, a "reasonable possibility" standard should not be construed to require proof that a changed outcome is a virtual certainty.

6. We do not find it necessary to abandon our earlier *Kane* criteria. The other *Kane* factors—the effect of the claimant's failure to present the evidence in the first instance and the possibility that the claimant may be denied a fair hearing if the additional evidence is not considered—may also continue to inform a district court in its decision whether to remand pursuant to § 405(g).

7. There is no dispute that evidence of Newhouse's June 1983 hospitalization satisfies the section 405(g) requirements that proffered evidence be both new and not merely cumulative of evidence already in the record.

Accordingly, the case is remanded to the district court with instructions to remand to the Secretary for consideration of the additional evidence in accordance with the foregoing.