Carolyn P. MAYS,

v.

**Jo Anne B. BARNHART,[1] Commissioner of the Social Security Administration.**

**Civil Action No. 01–5335.**

United States District Court, E.D. Pennsylvania.

Oct. 23, 2002.

---

**1.** Jo Anne B. Barnhart became the Commissioner of Social Security, effective November 14, 2001, and is accordingly substituted as the defendant in this action. *See* Fed.R.Civ.P. 25(d)(1).

**444**

Eric J. Fischer, Elkins Park, PA, for Plaintiff.

Nicholas Cerulli, Social Securtiy Administration, Phila, PA, for Movant.

## *MEMORANDUM*

BAYLSON, District Judge.

Plaintiff seeks judicial review of the decision of the Social Security Administration ("SSA"), denying her claim for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–34. Presently before this Court are the parties' cross motions for summary judgment. Chief United States Magistrate Judge James R. Melinson has issued a report, pursuant to 28 U.S.C. § 636(b)(1)(C), recommending that this Court deny Plaintiff's motion and affirm the SSA's decision. Plaintiff has filed objections to the Magistrate's report. Upon careful and independent consideration of the administrative record and all filings in this Court, I will overrule Plaintiff's objections and grant Defendant's motion for summary judgment.

### I. Background and Procedural History[2]

Plaintiff filed three separate applications for disability benefits. On July 22, 1998 she applied for Disability Insurance Benefits (DIB). (*See* Administrative Record (R.) at 39, 52). She then applied for Supplemental Security Income (SSI) on August 3, 1998. (R. 11). Finally, on July 26, 1999, Plaintiff applied for Widow's Insurance Benefits (WIB). (*Id.*). Plaintiff claimed that she had been disabled since July 30, 1994, due to tendinitis of the right shoulder, arthritis of the legs, degenerative joint disease and depression. (R. 74).

Based on her SSI application, the state disability agency found Plaintiff disabled,

---

**2.** The Magistrate Judge has comprehensively detailed Plaintiff's medical history, employment experience and hearing testimony. *See* Report and Recommendation ("R & R") at 2–7. Plaintiff does not contend that the R & R

incorrectly recites these basic background facts. Accordingly, this Court will focus herein on Plaintiff's legal objections to the R & R and will reiterate only those facts necessary to this disposition.

as of August 1, 1998, and awarded SSI benefits. (*Id.*). However, Plaintiff was denied DIB and WIB. Plaintiff requested reconsideration, which was denied. (R. 34). Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 14, 1999. (R. 231). Plaintiff, represented by counsel, testified at the hearing. (R. 236).

On February 11, 2000, ALJ Stephen Bosch issued his written decision, denying DIB and WIB benefits, based on his finding that Plaintiff was not "disabled," as defined by the Social Security Act, at any time through the date of the ALJ's decision. (R. 17–18). The SSA's Appeals Council denied Plaintiff's request for review, rendering the ALJ's unfavorable decision the final decision of the Commissioner. (R. 4). Plaintiff then filed this action, alleging that the ALJ had made numerous legal errors and that substantial evidence did not support his decision.

## II. Social Security Disability Law

### A. *Disability Determinations*

The Social Security Act authorizes several classes of disability benefits, including DIB, *see* 42 U.S.C. § 423; SSI, *see* 42 U.S.C. § 1382; and WIB, *see* 42 U.S.C. § 402(e)(1)(B)(ii). Each of these entitlements requires that the applicant be under a "disability,"[3] which is defined as the inability "to engage in any *substantial gainful activity* by reason of any *medically determinable* physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1), 1382c(a)(3)(A) (emphasis added).

Congress has authorized the Commissioner "to make findings of fact, and decisions as to the rights" of any individual applying for disability benefits. 42 U.S.C. § 405(b)(1). The Social Security Regulations establish a five-step sequential evaluation process for determining whether a claimant is disabled.

At step one, if the claimant is presently working and the work is considered "substantial gainful activity," the claimant must be found "not disabled." 20 C.F.R. § 404.1520(b).

Next, at step two, if the agency determines that the claimant does not have a "severe impairment," meaning an impairment which "significantly limits [his or her] physical or mental ability to do basic work activities," he or she will be found not-disabled. 20 C.F.R. § 404.1520(c).

At the third step, the Commissioner compares the claimant's impairments to those in the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P.App. 1. (commonly called "The Listings"). If the applicant's impairment either meets "or is equal to" a listed impairment, he or she will be found disabled, and awarded benefits, irrespective of age, education or work experience. 20 C.F.R. § 404.1520(d).

Assuming the claimant's impairments do not meet or equal a Listing, the Commissioner determines, at step four, whether the claimant's condition prevents him or her "from doing past relevant work." 20 C.F.R. § 404.1520(e). This finding may require an evaluation of the individual's "residual functional capacity" ("RFC"), as well as the "physical and mental demands" of the person's prior occupation. *Id.* In making this assessment, an ALJ will often rely upon the testimony of a vocational

---

**3.** A non-disabled widow may be entitled to Widow's Insurance Benefits if she "has attained age 60." 42 U.S.C. § 402(e)(1)(B)(i).

Plaintiff was 55 at the time of the ALJ's decision. (R. 12, 39).

expert. If the claimant is found to be capable of returning to his or her former vocation, a finding of "not disabled" will be entered and benefits will be denied. *Id.*

Assuming step four is resolved in the applicant's favor, the burden then shifts, at step five, to the Administration, to establish that the claimant's impairments do not prevent him or her from doing "other work" that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(f). *See Thomas v. Commissioner of Soc. Sec.,* 294 F.3d 568, 571 (3d Cir.2002) ("At Step Five, the Commissioner has the burden of demonstrating that the claimant is capable of performing other jobs existing in significant numbers in the national economy."). If the applicant is determined to be incapable of adjusting to "other work," he will be found disabled; if he can adjust to other work, he will be found not-disabled.

In the present case, the ALJ's evaluation terminated at step four, when he determined that, despite her impairments, Plaintiff was capable of returning to her prior work as a receptionist. (R. 16).

### B. *Judicial Review of Disability Decisions*

The Social Security Act provides for judicial review of any "final decision of the Commissioner of Social Security" in a disability proceeding. 42 U.S.C. § 405(g). The district court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* However the Com-

missioner's findings "as to any fact, if supported by *substantial evidence,* shall be conclusive." *Id.* (emphasis added). Accordingly, this Court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." *Schwartz v. Halter,* 134 F.Supp.2d 640, 647 (E.D.Pa.2001).

Substantial evidence has been defined as "more than a mere scintilla" or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). The substantial evidence standard "is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." *Schaudeck v. Commissioner of S.S.A.,* 181 F.3d 429, 431 (3d Cir.1999).

### III. Discussion

In ruling on objections to the Report and Recommendation (R & R) of a United States Magistrate Judge, this Court reviews *de novo* only "those portions" of the R & R "to which objection is made." 28 U.S.C. § 636(b)(1). *See also* Fed.R.Civ.P. 72. Plaintiff raises two objections to Chief Magistrate Judge Melinson's R & R, which this Court will address in turn.[4]

### A. *First Objection*

 Plaintiff first contends that the Magistrate improperly applied a "total dis-

---

**4.** Pages 2–4 of Plaintiff's Objections begin with the following heading: "The Report Simply Ignores the Controlling Third Circuit Caselaw." Plaintiff's Written Objections ("Obj.") at 2. Because Plaintiff's Objections are unnumbered, this Court cannot readily discern whether this section is intended as a separate basis for objection, or simply as a preface to the two objections which follow. In pages 2–4 of her brief, Plaintiff never refers to any facts specific to the instant case, nor to any specific error in the Magistrate's reasoning. This Court, therefore, will treat pages 2–4 of the Objections as an introductory passage, raising no independent objection.

ability" standard in reviewing the ALJ's determination. *See* Plaintiff's Written Objections ("Obj.") at 5. Plaintiff argues that the R & R "repeatedly—and mistakenly—assumes that Ms. Mays must show 'total disability' in order to justify a finding in her favor." *Id.* Upon review of the R & R and the record, this Court concludes that Plaintiff's first objection amounts to little more than semantics.

As explained above, disability under the Social Security Act requires proof that one is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1). Under this strict standard, many claimants are properly denied disability benefits, though they have one or more "severe" impairments. *See* 20 C.F.R. § 404.1520(c). If, despite serious physical or mental limitations, a claimant still can perform his former occupation or other work existing in the national economy, he will not be found disabled. *See* 20 C.F.R. § 404.1520(e)-(f).

In October 1998, to assist the Commissioner in making a disability determination, Emil Sfedu, M.D., performed a consultative examination on Plaintiff. (R. 110). Dr. Sfedu's findings would suggest that Plaintiff was capable of performing, at most, "sedentary" work.[5] *See* 20 C.F.R. § 404.1567(a). Considering Dr. Sfedu's report and all other evidence submitted, the ALJ found that, despite her "severe right shoulder impingement syndrome," Plaintiff retained the residual functional capacity (RFC) to perform "light" exertion work.[6] (R. 17). In his R & R, the Magistrate Judge noted that "Dr. Sfedu's examination

notes do not support a finding of total disability." R & R at 13.

The phrase "total disability" was obviously intended by the Magistrate to mean disability under the Social Security Act's strict standards. It is not uncommon for courts to use the term "total" as a modifier, simply to reflect the legal, as opposed to layman's, definition of "disability." *See, e.g., Adorno v. Shalala,* 40 F.3d 43, 48 (3d Cir.1994) ("The ALJ must review all the medical findings and other evidence presented in support of the attending physician's opinion of total disability."); *Chamberlain v. Shalala,* 47 F.3d 1489, 1494 (8th Cir.1995) (holding ALJ rightly discounted physician's conclusory findings of plaintiff's "inability to bend or stoop and his total disability"); *Wiley v. Chater,* 967 F.Supp. 446, 450 (D.Kan.1997) (upholding ALJ's denial of benefits where ALJ "found that despite claimant's complaints of fatigue and pain, he is able to concentrate and his lifestyle, although restricted, is not consistent with total disability"). Accordingly, the R & R's references to "total disability" and "total inability to work" were in no way erroneous. R & R at 13, 17.

**B. *Second Objection***

Next, Plaintiff contends that the R & R impermissibly discredits two consultative physicians based on the Magistrate Judge's own "newly minted theories," while the ALJ failed to provide adequate reasons for discounting those consultants. Obj. at 6. It is well established that an ALJ must explain his reasons for discounting evidence that is contrary to his conclu-

**5.** The Social Security Regulations classify jobs as sedentary, light, medium, heavy, and very heavy. Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a).

**6.** Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

sions. *See, e.g., Fargnoli v. Massanari,* 247 F.3d 34, 43 (3d Cir.2001); *Cotter v. Harris,* 642 F.2d 700, 706 (3d Cir.1981) (explaining "there is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record"). The Third Circuit has recognized that it is the ALJ's obligation "to provide an adequate basis so that the reviewing court can determine whether the administrative decision is based on substantial evidence." *Cotter,* 642 F.2d at 706. Without such an explanation, the court is "handicapped," as it is "impossible to determine whether the ALJ's [conclusion] is supported by substantial evidence." *Fargnoli,* 247 F.3d at 40.

An ALJ "may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects." *Adorno v. Shalala,* 40 F.3d 43, 48 (3d Cir.1994). However, consideration of all the evidence does not mean that the ALJ must explicitly refer to each and every exhibit in the record. In *Fargnoli,* the Third Circuit recently explained:

> Although we do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant, such as Fargnoli, has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record *consistent with his responsibilities under the regulations and case law.*

247 F.3d at 42 (emphasis added).

In assessing medical evidence, an ALJ may reject any physician's opinion that is either contrary to other medical evidence of record, *see Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir.1988), or insufficiently supported by clinical data. *See Newhouse v. Heckler,* 753 F.2d 283, 286 (3d Cir.1985). In particular, when considering the findings of a consultative examiner, who never actually treated the claimant, an ALJ is permitted to

> give more weight to opinions from [a claimant's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2).

Beth Farber, Psy. D and Emil Sfedu, M.D., each examined Plaintiff to assist the Commissioner in making a disability determination. Plaintiff argues that the ALJ impermissibly ignored 1.) Dr. Farber's findings in relation to Plaintiff's mental impairment, and 2.) Dr. Sfedu's findings in relation to Plaintiff's residual functional capacity (RFC). Moreover, Plaintiff contends that the Magistrate provided his own reasoning as to these issues in lieu of the ALJ's silence.

### 1. Dr. Farber's report

In March 1999, Dr. Farber performed a psychological examination of Plaintiff, on behalf of the state disability agency. (R. 139). The psychologist observed that Plaintiff appeared to be in extreme pain due to her arthritis of the legs and degenerative joint disease. (*Id.*). She also noted that Plaintiff walked with a labored gait and seemed out of breath, though this could have been due in part to her obesity. (*Id.*). Plaintiff, who seemed "overwhelmed" and anxious, explained to the consultant that, since her mother's death, she has "not known how to conduct her

life." (*Id.*). Dr. Farber opined that Plaintiff will have difficulty in maintaining interpersonal relationships and that "good work adjustment is not likely in the future." (R. 142). Dr. Farber diagnosed major depression and borderline personality disorder (R. 143) and concluded that "it would be difficult for [Plaintiff] to maintain employment, due to her emotional volatility and her difficulties maintaining relationships." (R. 144).

■ The ALJ considered the complete medical record and determined that insufficient evidence existed to establish a "severe" mental impairment. (R. 13). Specifically, at step two of the Administration's sequential evaluation process, the ALJ reasoned that, although Plaintiff

> experienced an acute episode of depression in December of 1998, following her December 7, 1998 surgery, there is no medical evidence of any prior mental health treatment (See Exhibit 4F [R. 117]). Therefore the claimant's depression has not been shown to be a severe impairment prior to the relevant time periods.

(*Id.*). This analysis is supported by substantial evidence, as the few entries in Plaintiff's medical record pertaining to mental health do not suggest any serious psychological problem.

For instance, Peter Arcuri, D.O., who regularly treated Plaintiff's physical conditions, wrote in a June 1996 treatment note the words "psych. anxious." (R. 216). He prescribed Ativan, an anti-anxiety agent. (*Id.*). In August 1997, Dr. Arcuri wrote "psych. depressed." (R. 206). He prescribed an anti-depressant, Zoloft. (*Id.*). In February 1999, Dr. Arcuri performed a consultative examination on Plaintiff to assist the state disability agency. In his report he noted that Plaintiff continued to take Zoloft for her depression. (R. 138).

He wrote, "I do not know if she can get into the workplace or not." (*Id*).

The ALJ recognized that Dr. Arcuri had diagnosed depression and that Plaintiff gets upset and nervous around people. (R. 15). The ALJ also considered in his decision that, as early as 1979, Dr. Arcuri recommended psychological treatment. (*Id.*). The ALJ did not, however, specifically refer to the report of the consultative psychologist, Dr. Farber.

This Court recently decided another case, *Versace v. Barnhart*, in which the ALJ had not explicitly mentioned a particular piece of evidence. The Court explained:

> According to Versace, Dr. Winer's 1995 assessment was supported by a 1992 EMG report. The ALJ did not discuss this report in his opinion. However, the ALJ is not required to discuss every medical record; he need only explain his evaluation of the relevant medical evidence. [Magistrate] Judge Melinson correctly found that although the ALJ did not discuss the 1992 EMG report, the omission does not constitute reversible error because the rest of the evidence, including a 1992 nerve conduction study, supports the ALJ's conclusion.

*Versace v. Barnhart*, No. 01–cv–3909, 2002 WL 1880526, 2002 U.S. Dist. LEXIS 15340, at *7–8 (E.D.Pa. Aug. 14, 2002) (Shapiro, S.J.) (citations omitted). In the instant case, as in *Versace*, Magistrate Judge Melinson correctly found that although the ALJ did not explicitly discuss Dr. Farber's one-time consultative report, "the omission does not constitute reversible error because the rest of the evidence," which the ALJ carefully explicated, supports his conclusion that Plaintiff did not have a severe mental impairment. *Id. See also Campbell v. Shalala*, No. 93–cv–0181, 1993 WL 452039, 1993 U.S. Dist. LEXIS 15832, at *11 n. 3 (E.D.Pa. Nov. 1,

1993) ("[T]he task of this Court in reviewing the ALJ's decision is not to determine whether he explicitly mentioned every piece of evidence in his opinion (a requirement that would impose an almost impossible burden not only on ALJs but also on reviewing courts), but rather to determine whether the ALJ's findings were supported by substantial evidence.").

■ Moreover, the ALJ was fully justified in affording no weight to Dr. Farber's report, because her findings are both contrary to other medical evidence of record, *see Frankenfield,* 861 F.2d at 408, and insufficiently supported by clinical data. *See Newhouse,* 753 F.2d at 286. The records of Dr. Arcuri and others who actually treated Plaintiff contain only sparse indications of a psychological problem. As the Magistrate Judge put it, "two medical notes about anti-depressant use" does not establish that Plaintiff was "significantly limited in her ability to perform basic work activities." R & R at 15. The ALJ was permitted to give greater weight to these treatment records, as they "provide a detailed, longitudinal picture" of Plaintiff's medical history, 20 C.F.R. § 404.1527(d)(2), as compared to a one-time snapshot evaluation by a state agency psychologist. With respect to clinical support, Dr. Farber's report consists entirely of her own subjective impressions of Plaintiff's emotional state, based mainly on Plaintiff's statements to Dr. Farber. (R. 139-44). The psychologist also engaged Plaintiff in number and word exercises, on many of which Plaintiff scored well. Therefore, the ALJ was justified in dismissing this consultant's opinion, albeit tacitly.

Likewise, Plaintiff's argument that the Magistrate substituted his own reasoning in place of reasons omitted by the ALJ is without merit.

2. Dr. Sfedu's report

Dr. Sfedu found that Plaintiff had "limited" use of her upper extremities, could lift or carry less than ten pounds occasionally and could stand or walk less than two hours per day (R. 115), indicating that, if Plaintiff were capable of any work, such work could only be "sedentary." *See* 20 C.F.R. § 404.1567(a). The ALJ did not ignore Dr. Sfedu's findings. He noted that Plaintiff presented to Dr. Sfedu

> with complaints of tendinitis of the rights shoulder and degenerative disc disease. Physical examination of the hips, knees, and ankles did not show any signs of acute synovitis and no crepitus upon flexion-extension of the joints was found. [Plaintiff] complained of only mild pain during the performance of range of motion exercises. Range of motion of the lumbosacral spine was full.

(R. 14). Considering Dr. Sfedu's report and other medical evidence submitted, the ALJ found that Plaintiff retained the RFC to perform "light" exertion work. (R. 17).

■ As noted above, an ALJ may accord limited weight to a medical opinion that is inconsistent with other medical evidence. *See* 20 C.F.R. § 404.1527(d)(4). The extent of physical limitation suggested by Dr. Sfedu's report is inconsistent with the remainder of the record. For instance, in March 1998, Brian Sennett, M.D., who treated Plaintiff's shoulder, noted "dramatic improvement" and a reduction in pain and limitation. (R. 88). In April and May 1998, Dr. Sennett noted that Plaintiff continued to have "some discomfort;" yet, the doctor recorded 110 degree flexion, 60 degree external rotation, and 90 degree forward elevation. (R. 83). These clinical findings hardly resemble the drastic restrictions found by Dr. Sfedu, including *zero degrees* forward elevation. (R. 113). Similarly, Peter Arcuri, D.O., who treated Plaintiff's degenerative joint

disease, back pain and leg pain, stated, in August 1998, "I do not know if she can get into the workplace or not." (R. 138). Dr. Arcuri's ambiguity as to the extent of Plaintiff's functional limitations contrasts with Dr. Sfedu's opinion that Plaintiff could perform only sedentary work, if any. Accordingly, the ALJ was justified in discounting Dr. Sfedu's conclusions. The Magistrate's R & R echoed the ALJ's sound reasoning in this regard.

For all of the above reasons, Plaintiff's objections must be overruled.

## IV. Conclusion

For the foregoing reasons, this Court concludes that the decision of the ALJ is properly supported by substantial evidence. Accordingly, Plaintiff's Objections to the Report and Recommendation are overruled and the Commissioner's motion for summary judgment is granted. An appropriate Order follows.

### *ORDER*

AND NOW, this day of October, 2002, after careful and independent consideration of the parties' cross-motions for summary judgment, and review of the Report and Recommendation of James R. Melinson, Chief United States Magistrate Judge, it is hereby ORDERED that:

1. The Report and Recommendation is APPROVED and ADOPTED;

2. The Commissioner's Motion for Summary Judgment is GRANTED;

3. The Plaintiff's Motion for Summary Judgment is DENIED; and

4. The decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.