### Luz SUAREZ,

v.

### Michael J. ASTRUE Commissioner for Social Security.

### Civil Action No. 12–3373.

United States District Court, E.D. Pennsylvania.

May 8, 2013.

Michael Patrick Boyle, Philadelphia, PA, for Luz Suarez.

Andrew C. Lynch, Nicole A. Schmid, Social Security Admin., OGC, Region III, Sandra Romagnole, Office of General Counsel SSA, Philadelphia, PA, for Michael J. Astrue.

## *ORDER*

THOMAS N. O'NEILL, JR., District Judge.

AND NOW, this 8th day of May, 2013, upon consideration of Magistrate Hart's Report and Recommendation (Dkt. No. 14), plaintiff Luz Suarez's Objections to the Report and Recommendation (Dkt. No. 15), defendant Michael Astrue's response thereto (Dkt. No. 16) and the well-developed record, it is ORDERED that:

1. Plaintiff's Objections[1] to the Magistrate Judge's Report and Recommendation are OVERRULED; and

2. Magistrate Judge Hart's Report and Recommendation is APPROVED and ADOPTED.

3. JUDGMENT is entered in favor of the Commissioner, affirming the decision of the Commissioner, and against plaintiff Suarez.

## *REPORT AND RECOMMENDATION*

JACOB P. HART, United States Magistrate Judge.

Luz Suarez brought this action under 42 U.S.C. § 405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Supplemental Security Income ("SSI"). She has filed a Request for Review to which the Commissioner has responded. For the reasons that follow, I recommend that Suarez's Request for Review be denied and judgment granted in favor of the Commissioner.

## I. *Factual and Procedural Background*

Suarez was born on November 10, 1970. Record at 132. She left school after completing the ninth grade. Record at 153. She worked for a short time placing phone calls for a debt collection service. Record at 158.

On December 8, 2008, Suarez applied for SSI. Record at 132. She alleged disability since June 1, 2005, on the basis of rheumatoid arthritis. Record at 132, 147. Her claim was denied on or about February 18, 2009. Record at 87. She then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 93.

A hearing took place on January 20, 2010. Record at 27. On July 30, 2010, however, the ALJ issued a written decision denying benefits. Record at 11. The Appeals Council denied Suarez's request for review, permitting the ALJ's decision to stand as the final decision of the Commission. Record at 1. Suarez subsequently filed this action.

---

**1.** I agree with defendant both that the record supports the ALJ's finding that Suarez is capable of performing jobs requiring a reasoning level of three and that such work is consistent with a limitation to simple, unskilled work. *See Simpson v. Astrue*, No. 10–2874, 2011 WL 1883124, at *7–8 (E.D.Pa. May 17, 2011). I also note that the Court of Appeals has addressed issues related to those raised in Suarez's first objection, namely whether the ALJ's hypothetical questions posed to the vocational expert and his subsequent finding that Suarez was limited to simple, unskilled work adequately acknowledged Suarez's moderate limitations in maintaining concentration, persistence or pace. My colleague Judge Shapiro has carefully analyzed and considered those Court of Appeals cases in her opinion in *Douglas v. Astrue*, No. 09–1535, 2011 WL 482501, at *4–5 (E.D.Pa. Feb. 4, 2011), and I agree with her in concluding that a limitation to simple, unskilled work sufficiently accounts for a plaintiff's moderate limitations in concentration, persistence and pace.

## II. *Legal Standards*

 The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Doak v. Heckler,* 790 F.2d 26, 28 (3d Cir.1986); *Newhouse v. Heckler,* 753 F.2d 283, 285 (3d Cir.1985). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. *Richardson v. Perales, supra* at 401, 91 S.Ct. 1420; *Kangas v. Bowen,* 823 F.2d 775 (3d Cir. 1987); *Dobrowolsky v. Califano,* 606 F.2d 403 (3d Cir.1979). Moreover, apart from substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standard. *Coria v. Heckler,* 750 F.2d 245 (3d Cir.1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a twelve-month period." 42 U.S.C. § 423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider our work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirements in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

## III. *The ALJ's Decision and Suarez's Motion for Summary Judgment*

In his decision, the ALJ found that Suarez suffered from the severe impairments of rheumatoid arthritis, osteoarthritis, obesity and a mood disorder. Record at 16. He also acknowledged that she suffered from thyroid disease, but found that it was not a severe impairment, as it was well-controlled. *Id.* He did not find that she suffered from an impairment, or from any combination, that met or equaled a listed impairment.

The ALJ concluded that Suarez retained the RFC to engage in sedentary work which permits a sit/stand option, and does not involve exposure to cold, wetness or humidity, or exposure to heights. Record at 17–18. Additionally, he wrote: "I find that the claimant's severe mood disorder, NOS, limits her to the performance of simple, unskilled work." Record at 18. In reliance upon the testimony of a vocational expert who testified at the hearing, the ALJ found that this RFC permitted Suarez to work as a phone order clerk in the food industry, or as a phone quotation clerk. Record at 23.

In her Request for Review, Suarez maintains that the ALJ erred in failing to

impose any manipulative limitations in his RFC assessment. She also argues that he should have assessed the effects of her obesity in combination with her other impairments. Finally, she maintains that the jobs that the ALJ identified for her were inconsistent with his RFC assessment, which limited her to "simple" work.

## IV. *Discussion*

### A. *Manipulative Limitations*

■ As above, Suarez maintains that the ALJ erred in failing to include a manipulative limitation in the RFC which he presented to the vocational expert. She points out that Stephanie Flagg, MD, Ph. D., a rheumatologist, diagnosed rheumatoid arthritis on January 6, 2006, after finding that Suarez's blood tested positive for CCP antibody. Record at 372. Dr. Flagg noted wrist swelling and tenderness on December 20, 2005. Record at 371. She also reported that Suarez complained of pain in her fingers and wrists, among other locations. *Id.* On January 26, 2006, Dr. Flagg again noted tenderness in the wrists, although accompanied by a good range of motion. Record at 369. On March 24, 2006, however, there was no inflammation in Suarez's hands. Record at 368.

Temple Rheumatology Associates, which has provided records from between July 26, 2006, and November 2, 2009, repeatedly noted complaints of pain in Suarez's hands and shoulders, among other areas of her body. Record at 413–458. Suarez received injections (it is unclear what she was injected with) in her shoulders on several occasions, and once in her right wrist. Record at 421, 429, 431, 433. On March 24, 2009, Steven Burney, MD, and Jessamyn Melnicoff, CRNP, who treated Suarez at Temple, filled out a Medical Source Statement which limited Suarez to occasional handling and fingering, and no reaching, explaining: "Swelling, pain in multiple joints." Record at 463.

Opposing this evidence, however, were the June 23, 2008, x-rays which showed "very minimal" degenerative arthritic changes in the right hand, and "no erosive changes to suggest rheumatoid arthritis." Record at 252. Similarly, the x-ray of the left hand showed "very mild degenerative arthritic changes" and "no erosive changes . . . to suggest rheumatoid arthritis." Record at 256. The x-ray of Suarez's right wrist showed "no definitive erosive changes to suggest rheumatoid arthritis," although it showed an irregularity which "could reflect the very earliest changes of rheumatoid arthritis." Record at 258. Suarez's left wrist had "a few scattered cystic lesions" which were presumed to represent degeneration, but—again— showed no evidence of rheumatoid arthritis. Record at 254. It does not appear that Suarez had her shoulders x-rayed. The clinical evidence, therefore, does not fully support the extreme restrictions indicated by Dr. Burney and Ms. Melnicoff.

Moreover, Suarez's daily activities did not appear to be curtailed by manipulative limitations. Notably, one of the treatment notes from Temple reported that Suarez experienced cramping in two fingers "while playing video games," a pastime which involves extensive and prolonged manipulation. Record at 416. In addition, Suarez testified that she was capable of using hand controls while driving a car, opening her own medicine bottles each day, opening a pack of cigarettes, and operating a television remote control. Record at 46 (driving a car); 66 (opening a cigarette pack); 67 (opening medicine bottles); 68 (TV remote control). She was also capable of dressing herself and tending her own hair. Record at 51–52. The ALJ discussed Suarez's capabilities in this regard in his decision. Record at 18–19.

Indeed, the combination of the benign x-rays and Suarez's activities of daily living led Louis B. Bonita, MD, the consulting medical expert in this case, to conclude in his February 17, 2009, RFC assessment that Suarez was capable of work at the medium exertionary level, with no manipulative limitations. Record at 361–367, see especially 363 (no manipulative limitations) and 366 (regarding basis for opinion).

Further, when asked at her hearing why she could not work, Suarez replied: "I have a lot of trouble sitting down for a long period of time and I have a lot of trouble standing up." Record at 45. Any manipulative limitation did not appear to be of first importance.

The ALJ clearly credited Suarez's claims much more strongly than did Dr. Bonita, since he limited Suarez to sedentary work. However, substantial evidence in the form of the x-rays, Suarez's daily activities, and her own testimony, supports his failure to include a manipulative limitation in his RFC assessment. Therefore, Suarez is not entitled to relief on this claim.

B. *Obesity*

During the relevant period, Suarez, who is 5 feet 8 inches tall, weighed between 235 and 244 pounds. Record at 57, 146. Thus, she had a body mass index ranging between 36 and 37, both of which are in the obese range. The ALJ found that Suarez's obesity was a severe impairment. Record at 16. Under the Social Security regulations, obesity must be analyzed in terms of its impact on a claimant's functional abilities. SSR 02–01p, SSR 00–3p. There is no such analysis in the ALJ's opinion. Suarez argues that this requires remand.

■ Suarez is correct in maintaining that the ALJ erred in this regard. The Court of Appeals for the Third Circuit has held that even a claimant's failure to assert obesity as a basis for a finding of disability does not excuse the lack of a "meaningful" analysis, where obesity has been recognized by the ALJ to constitute a severe impairment. *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 504 (3d Cir. 2009). By identifying obesity as a severe impairment, the ALJ acknowledged that it had more than a minimal impact upon Suarez's ability to do basic work activities. 20 C.F.R. § 404.1520(a) and (c). By this token, the extent to which it does impact her abilities must be discussed. If the ALJ did not believe the obesity had such an impact, he could have found it not to be a severe impairment.

■ Remand is not necessary, however, because the evidence, including medical records, application forms, and Suarez's testimony, would not support a conclusion that her obesity—individually or in combination with her other impairments—rendered her unable to work. In *Diaz*, when considering a 4' 11" claimant who weighed 252 pounds, and claimed joint pains, the Court of Appeals for the Third Circuit urged the use of "common sense" to find that the claimant's weight exacerbated her joint dysfunction. 577 F.3d at 504. The ALJ must, however, limit the exercise of common sense to the analysis of the evidence of record. If an ALJ were to claim that "common sense" led in a direction where the evidence did not follow, he would simply be substituting his opinion for that of the medical experts, which is not permitted. *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir.2000).

Here, the only mention of Suarez's obesity in the well-developed record is in connection with an examination for snoring. Record at 400. At her hearing, Suarez did not mention any affect her weight had upon her ability to work, despite extensive discussion of her physical capabilities.

In her Request for Review, Suarez cites SSR 02–01p where it states that "the ability to manipulate may be affected by the presence of fatty tissue in the hands and fingers," in arguing that her obesity might impact her manipulative abilities. However, she stops short of actually arguing that this is the case here. She has not pointed to any evidence in the record which would support such a claim, had she made it, either in the medical records or in her own representations in the application forms or at the hearing.

■ In summary, although the ALJ erred in failing to discuss the effect of Suarez's obesity upon her capabilities, I do not recommend remand. As the Honorable Richard G. Andrews, sitting in the United States District Court for the District of Delaware, has said in similar circumstances, "the Court cannot remand the ALJ's decision based on the failure to confront evidence that does not exist." *Neff v. Astrue*, 875 F.Supp.2d 411, 423 (D.Del. 2012).

## C. The ALJ's Restriction to Simple, Unskilled Work

Suarez's final claim is that the ALJ erred in finding she could perform jobs requiring level 3 reasoning skills, although he limited her to simple, unskilled work. A Report and Recommendation authored by the Honorable Elizabeth T. Hey, a Magistrate Judge in this District, and approved by the Honorable Paul Diamond, contains an excellent explanation of the concepts at issue here:

> The DOT (Dictionary of Occupational Titles) is "a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Boone v. Barnhart*, 353 F.3d 203, 206 (3d Cir.2004) (quoting *Burnes* [*Burns*] *v. Barnhart*, 312 F.3d 113, 119 (3d Cir.2002)). Each job classification in the DOT contains a detailed description of the job and necessary skills and abilities. Each entry also includes a "definition trailer" [which includes, among other things] a code for "specific vocational preparation" (SVP), defined as "the amount of lapsed time required by a typical worker to learn to learn [to perform the job]." DOT app. C. SVP levels correspond to the skill levels set forth in 20 CFR § 404.1568. *See* SSR 00–4p, 2000 WL 1898704, at *3. Specifically, unskilled work corresponds to an SVP of 1–2; semi-skilled work corresponds to an SVP of 3–4, and skilled work corresponds to an SVP of 5–9. *Id.*

*Santore v. Astrue*, Civ. A. No. 9–1801, Report and Recommendation at slip op. 11 (E.D.Pa. Feb. 25, 2010), adopted by Order of March 17, 2010 (E.D.Pa.).

As Judge Hey went on to explain in *Santore*, the definition trailer for each job also contains components of the General Educational Development, which are "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." *Id.* at 12, *citing* DOT App. C. It is composed of three scales—mathematical development, language development, and—as is at issue here—reasoning development. *Santore*, at slip op. 12. Each scale has six levels, running from 1 (requiring the least amount of development) to 6 (requiring the most). *Id.*

■ In this case, the ALJ was careful to determine that both of the jobs proposed by the vocational expert as suitable for Suarez had SVP levels of two, making them unskilled work. Record at 81, 82. However, the issue of a reasoning development level was not discussed with the vo-

cational expert, and is not discussed in the ALJ's written decision.

The question, therefore, is whether the ALJ's limitation of Suarez to "simple, unskilled" work limited her reasoning development level at all. I conclude that it did not. The word "unskilled" obviously invoked SVP, since that scale corresponds to the Social Security skill levels, with a level of 2 representing unskilled work. SSR 00–4p.

Suarez appears to claim that the ALJ's mere use of the word "simple" requires a low reasoning development level, but the cited cases do not bear this out. The word "simple" is never used without some accompanying adjective—no claimant is ever just limited to "simple work."

This can be seen in all of the cases which Suarez cites, in which a reasoning development level of 3 was found to be excessive. *See Sanabria v. Astrue,* Civ. A. No. 10–6782, Report and Recommendation (E.D.Pa. Nov. 22, 2011) ("simple and routine"); *Gorden v. Astrue,* Civ. A. No. 09–4542, Report and Recommendation (E.D.Pa. Sep. 29, 2010) ("short and simple instructions"); *McHerrin v. Astrue,* 2010 WL 3516433 (E.D.Pa. Aug. 31, 2010) ("simple, repetitive"); *Santore, supra,* ("simple one and two-step tasks"); *Ellison v. Astrue,* Civ. A. No. 08–2101, Report and Recommendation (E.D.Pa. March 3, 2009) ("simple, routine"); *Colon v. Astrue,* Civil Action No. 06–4971, Report and Recommendation (E.D.Pa. Sep. 28, 2007) ("simple, routine, one and two-step tasks"); *Collier v. Barnhart,* Civ. A. No. 04–5208, Approved and Adopted (E.D.Pa. Nov. 25, 2005) ("simple decision-making"); *Young v. Barnhart,* Civ. A. No. 05–3515, Approved and Adopted (E.D.Pa. Mar. 20, 2005) ("simple, repetitive tasks"); *Hurse v. Barnhart,* Civ. A. No. 05–5483, Report and Recommendation (E.D.Pa. Mar. 15, 2006) ("simple and routine").

Thus, these cases do not support Suarez's suggestion that the word "simple", standing alone, implies a limitation in a claimant's reasoning development level. Further, in none of the cases cited above was the word "simple" ever paired with "unskilled." This tends to support the Commissioner's argument that, in this case, "simple" strengthened the term "unskilled", without invoking any other vocational criteria. As the Commissioner points out, unskilled work is defined in the regulations as "work which needs little or no judgment to do *simple* duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a).

Because it does not appear that the ALJ intended to impose a limit on Suarez's reasoning development level, I recommend a finding that the ALJ was entitled to conclude she could perform work requiring a reasoning development level of 3.[1]

## V. *Conclusion*

In accordance with the above discussion, I make the following

### RECOMMENDATION

AND NOW, this 28th day of November, 2012, it is RESPECTFULLY RECOMMENDED that Plaintiff's Request for Review be DENIED and judgment entered in favor of the Commissioner.

---

**1.** The exact meaning of the word "simple" in the context of an RFC, however, remains unclear. Do "complex unskilled jobs" exist? Or is there "complex routine work"? If not, the word "simple" appears not to have any meaning.