NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4367
_____

SYBIL AHMAD,
                              Appellant

v.

COMMISSIONER OF SOCIAL SECURITY


On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No. 4-11-cv-01342
District Judge: The Honorable William J. Nealon

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
July 16, 2013

Before: RENDELL, SMITH, and SHWARTZ, *Circuit Judges*

(Filed: July 23, 2013)
_____

OPINION
_____

SMITH, *Circuit Judge.*

Sybil Ahmad appeals from the judgment of the United State District Court

for the Middle District of Pennsylvania, which affirmed the final decision of the

Commissioner of Social Security denying her application for disability benefits

under Title II and supplemental security income benefits under Title XVI of the Social Security Act.[1]  We exercise plenary review over legal issues.  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).  Judicial review of the Commissioner's factual findings is limited to determining whether the findings are supported by substantial evidence, 42 U.S.C. § 405(g), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  For the reasons set forth below, we will affirm the judgment of the District Court.

Ahmad applied for disability and supplemental security income benefits in 2008, alleging an onset of disability in April of 2008 due to persistent neck and lower back pain.  An MRI in January of 2008 revealed the presence of an Arnold-Chiari malformation (ACM) of the brain and spinal cord.  Ahmad's ACM involved the "extension of the cerebellar tonsils below the level of the foramen magnum" by 6.5 millimeters, with the extension measuring 8.3 millimeters in an MRI completed in November of 2008.  The latter MRI revealed no other intracranial abnormalities. Dr. Cantando, a neurosurgeon who examined Ahmad, documented that there was mild disc degeneration of the C5-6 and C6-7 discs, but no cord compression.  An MRI of the lumbar spine showed "[m]inimal degenerative changes of the discs at

---

[1]  The District Court exercised jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  We have jurisdiction under 28 U.S.C. § 1291 and 42 U.S.C. § 405(g).

2

L4-5 levels with slight encroachment," and minimal disc bulging at L5-S1. Ahmad submitted the results of these diagnostic tests as well as the medical reports of Dr. Lombard, her treating physician; Dr. Paz, a pain specialist; and Dr. Cantando, a neurosurgeon. In Ahmad's view, she was disabled because she was unable to work due to difficulties with walking, sitting, and using her arms to lift, pull or push. She complained of difficulties with grasping, which affected her dominant right hand more than her left hand. Headaches and pain also limited her ability to work.

An Administrative Law Judge (ALJ) conducted a hearing, during which Ahmad and a vocational expert testified. Thereafter, in a written decision, the ALJ conducted the five step sequential analysis and concluded that Ahmad was not disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. The ALJ determined that Ahmad's degenerative joint disease and ACM were severe impairments, that these impairments did not meet or equal any of the listed impairments in Appendix 1 of the regulations, *see* 20 C.F.R. Part 404, App. 1, and that Ahmad was limited to certain sedentary work and unable to perform postural maneuvers. In addition, the ALJ found that Ahmad had limitations in her ability to reach overhead and to use her dominant right upper extremity. Based on the testimony of the vocational expert, the ALJ determined that there was other work in the national economy that Ahmad could perform. Therefore, the ALJ concluded Ahmad was not disabled.

Ahmad's appeal to the District Court was unsuccessful. This appeal followed. She contends that the ALJ erred by discounting her subjective complaints and the opinions of her physicians. In Ahmad's view, the medical evidence "clearly and unequivocally" showed that she was disabled for purposes of the Social Security Act.

It is well settled that "[a]n ALJ must give serious consideration to a claimant's subjective complaints of pain" and "[w]here medical evidence does support a claimant's complaints of pain, the complaints should then be given 'great weight.'" *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). Great weight also should be accorded a report from a treating physician, and an ALJ may not substitute her judgment on a medical question for that of a treating physician. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). An ALJ, however, "may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Id.* (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir.1985)).

After reviewing the record, we conclude that the ALJ carefully considered the evidence and accorded great weight to Ahmad's testimony and her physicians' reports by finding that she was limited to less than the full range of sedentary work. Indeed, this finding was more limited than the opinion of the state agency

4

medical consultant who reviewed the medical evidence and opined that she was capable of performing light work with postural limitations.

Ahmad asserts that her treating physicians opined that she was incapable of performing even sedentary work. Scrutiny of these medical reports, however, fails to reveal any express opinion that she was unable to perform the sedentary work identified by the ALJ. Instead, as the ALJ noted, the medical reports confirmed the presence of the ACM and mild degenerative disc disease and consistently documented numerous normal findings. The ALJ appropriately considered this evidence in finding that Ahmad was limited to less than the full range of sedentary work.

Finally, Ahmad contends that the ALJ erred in finding that Ahmad could "perform the requirements of representative occupations such as a surveillance system monitor," for which there were "569 available jobs in the Pennsylvania State economy." In Ahmad's view, this position "does not exist in significant numbers to render it meaningful" for purposes of the final step in the sequential analysis. This final step places upon the Commissioner the burden of showing that Ahmad is capable of performing other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v) & (g), 404.1560(c), 416.920(a)(4)(v) & (g), 416.960(c).

As support for this argument, Ahmad cites a single case in which the Ninth Circuit concluded that the existence of 135 regional jobs as a surveillance system monitor was not a sufficient number of jobs to support a finding that the plaintiff could perform other work in the national economy. *Beltran v. Astrue*, 676 F.3d 1203, 1207 (9th Cir. 2012) (reversing the determination that a plaintiff was not disabled because she was capable of performing a single position for which there were 135 regional jobs). *Beltran,* however, is not controlling. In light of our determination in *Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir. 1987), that 200 jobs in the regional economy was a "clear indication" that other meaningful work in the national economy existed, we conclude that the ALJ did not err by concluding that the 569 jobs available as a surveillance system monitor was evidence of other work in significant numbers in the national economy.

Accordingly, we will affirm the judgment of the District Court.