Hector Oscar CORIA, Appellant,

v.

Margaret M. HECKLER, Secretary of
Health and Human Services.

No. 84–5108.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third
Circuit Rule 12(6)
Oct. 30, 1984.

Decided Dec. 17, 1984.

Garth, Circuit Judge, filed a concur-
ring opinion.

Barry L. Frank, Joel M. Solow, Freeman
& Bass, P.A., Newark, N.J., for appellant.

W. Hunt Dumont, U.S. Atty., Vincent E.
Gentile, Asst. U.S. Atty., Newark, N.J., for
appellee.

Before GARTH and SLOVITER, Circuit Judges, and LORD, District Judge.*

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Before us is the appeal of Hector Oscar Coria from the order of the district court granting summary judgment for the Secretary on Coria's appeal from the decision of the Secretary that he was not entitled to disability benefits.

Coria filed an application for disability benefits on September 18, 1981, alleging disability since January 5, 1977 due to internal, neurological, orthopedic, and neuropsychiatric impairments. Following administrative denial of his claim, the case was heard by an Administrative Law Judge who found that Coria has chronic low back syndrome and anxiety, that his complaints of pain were "exaggerated and not credible", and that he does not have a severe impairment because he has no impairment or impairments which significantly limit his ability to perform basic work-related functions. In making his determination, the ALJ decided to accord "little weight" to the medical evidence presented by appellant as it had been gathered originally for an earlier worker's compensation hearing. Tr. at 13. The ALJ's decision was approved by the Appeals Council.

Coria contends that the decision of the Secretary is not supported by substantial evidence, and that the medical evidence he presented supports his assertions of disabling pain and the existence of impairments that significantly limit his ability to perform basic work-related functions.

The record shows that Coria had a history of industrial accidents. In 1974, he was injured in an explosion at the chemical plant where he worked; in 1976, he was injured when a broken hatch cover fell on him and injured his leg, necessitating subsequent hospitalization. He resigned from that plant, and took a part-time job the following year which he quit, allegedly due to pain and discomfort.

Coria claims to have pain in his legs, back and head and to suffer from a loss of sensation in his right leg. He has been diagnosed by various physicians as having right sciatic neuritis, a 40% hearing loss in both ears, chronic conjunctivitis of both eyes, chronic bronchitis, difficulty in certain movements, chemical dermatitis, and various psychological problems.

In support of his disability claim, Coria submitted his hospital records, as well as medical reports from numerous doctors. Among those reports were:

(1) the report of Dr. I Ahmad, a diplomate American Board of Orthopedic Surgery who reported that his examination disclosed swollen knees, local tenderness, paravertebral muscle guarding in the cervical spine, restricted movements in flexion, spastic trapezius muscles, tenderness in the region of the lumbosacral spine, restricted extension, painful lateral bending, difficulty in squatting, and standing on the toes and heels, and back pain when straight leg raising was performed. Dr. Ahmad diagnosed Coria as having cervical and lumbosacral sprain and fibromyositis, and concluded he had orthopedic disability of 25% of total.

(2) The report of Dr. Atif Z. Ghander who found a 40% hearing loss in both ears, which he diagnosed as bilateral hearing impairment and rhinosinusitis. He also estimated a "permanent disability of 7-1/2% of partial total" [sic]. Tr. at 97.

(3) The report from the office of Warren M. Klein (signed by Dr. Saveran Scannapiego) diagnosing chronic conjunctivitis of both eyes, and opining that the irritants at work have resulted in a total disability of 8%.

(4) The report of Dr. Sidney E. Friedman finding Coria had some difficulty getting from a supine to an erect position, and that his pulmonary function testing was 27% of

---

* Hon. Joseph S. Lord, III, Chief Judge Emeritus, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

predicted normal, which he stated "points to both severe restrictive and obstructive pulmonary disease." Dr. Friedman concluded that Coria was suffering from chronic bronchitis which he estimated was a disability of 35% of normal.

(5) The report of Dr. Robert T. Latimer, a psychiatrist, who diagnosed Coria as having severe anxiety and depression.

(6) The report of Dr. Samuel L. Pollock, a psychiatrist, who performed a neuropsychiatric examination and found neurological residuals of exposure to noxious fumes, dust and loud noise and traumatic anxiety psychoneurosis and right sciatic neuritis. Dr. Pollock estimated permanent neuropsychiatric disability to be 30% of partial total.

Coria also submitted medical reports of other doctors. The ALJ considered and discussed the findings of the other doctors, but as to the six medical reports referred to above, the ALJ stated:

> Medical reports from Drs. Pollock, Ahmad, Ghander, Klein, Friedman and Latimer are *accorded little weight by the undersigned since they deal with the claimant's workmen's compensation case.* Such documentation is geared for a different test of disability (*Minitee v. Harris*, 80–1238, December 4, 1980 510 F.Supp. 1216).
>
> The opinions expressed by Drs. Pollock, Friedman and Ahmad that the claimant is "totally disabled" are not controlling over the Secretary who is charged with the responsibility of making the ultimate decision under Title II of the Social Security Act. The weight given to a physician's statement depends upon the extent it is supported by specific and clinical findings (CFR 404.1527). Moreover, the fact that a claimant suffers from a physical impairment does not prove that she is disabled. Disability is present only when the functional limitations imposed by the impairments are so severe as to prevent all substantial gainful activity.

■ Although the Secretary correctly states that the function of deciding whether or not a person is under a disability belongs to the Secretary, the ALJ's decision must comport with proper procedure and apply proper legal standards. In *Dobrowolsky v. Califano*, 606 F.2d 403, 406–07 (3d Cir.1979), this court stated that "[t]his Court has repeatedly emphasized that the special nature of proceedings for disability benefits dictates extra care on the part of the agency in developing an administrative record and in explicitly weighing all evidence." In *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir.1981), we held that "[t]he ALJ has a duty to hear and evaluate *all relevant evidence* in order to determine whether an applicant is entitled to disability benefits" (emphasis added). Coria contends that the ALJ was obliged to consider the medical reports of the six doctors, and that the reason given by the ALJ for according "little weight" to these reports is unpersuasive.

■ In this connection, it is important to distinguish between those portions of the physicians' reports that represent the physicians' medical findings and those portions of the reports that represent conclusions as to the claimant's disability for purposes of worker's compensation. The ALJ correctly noted that there are different statutory tests for disability under worker's compensation statutes and under the Social Security Act. For example, Social Security disability insurance is available only where the disability could be expected either to lead to death or last for more than twelve months, and prevents the ability to engage in any substantial gainful activity. 42 U.S.C. § 423(d)(1)(A) (1983). In contrast, under worker's compensation even temporary and partial disability are compensated. *See, e.g.*, N.J.Stat.Ann. 34:15–12 (West 1984–85 Supp.). Furthermore, Social Security disability conclusions are not geared to a percentage of disability, as are worker's compensation disability conclusions. *Id. See generally*, 3 A. Larson, The Law of Workmen's Compensation § 79.52(c) (1983). Thus, we believe the ALJ could reasonably disregard so much of the physicians' reports as set forth their conclusions as to Coria's disability for worker's compensation purposes.

On the other hand, the physicians' findings, *qua* findings, do not necessarily suffer from similar defects. We have frequently stated, "an ALJ is not free to set his own expertise against that of physicians who present competent medical evidence." *Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir.1979) quoted in *Wallace v. Secretary HHS*, 722 F.2d 1150, 1155 (3d Cir. 1983); *Van Horn v. Schweiker*, 717 F.2d 871, 874 (3d Cir.1983).

■ Although a worker's compensation hearing, unlike a Social Security disability hearing, may be adversarial in nature, this should not affect the reliability of the objective medical findings of the examining physician. There seems to be no valid reason why a claimant such as Coria should be required to undergo a second series of medical examinations that duplicate the series made for the worker's compensation claim. Instead, the ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim, unless there is some reasonable basis to believe a particular report or finding is not entitled to comparable weight.

■ Since the ALJ explicitly disregarded a substantial portion of the medical evidence, the ALJ failed to consider "all the evidence" as is required by *Cotter.* Coria asks us to review the evidence and to make the determination that he was under a severe impairment and was incapable of engaging in his prior work activity. We decline to interfere with the administrative process in such a manner. Congress has delegated that determination to the Secretary. We express no opinion on the persuasiveness of the six medical reports at issue. That should be determined in the first instance by the ALJ.

For the foregoing reasons, we will remand this case to the district court with instructions to remand to the Secretary for further proceedings consistent with this opinion.

GARTH, Circuit Judge, concurring:

I share the concern of the majority when an Administrative Law Judge, in determining whether a claimant is entitled to Social Security disability benefits, ignores physicians' findings which may help establish that claimant's disability. In this case the Administrative Law Judge stated that he "accorded little weight" to the medical reports from Doctors Pollock, Ahmad, Ghander, Klein, Friedman and Latimer.

In my opinion, given the nature of these reports, it was entirely appropriate for the Administrative Law Judge to discount the reliability of the physicians' conclusions. However, as Judge Sloviter points out, the Administrative Law Judge under law cannot disregard medical findings which are relevant to the claimant's condition no matter how little substance may be attributed to them in the final analysis.

A number of the doctors' reports in question reveal virtually no findings of consequence submitted on Coria's behalf. In his hearing before an Administrative Law Judge, Coria alleged that he was totally disabled due to internal, neurological, orthopedic, and neuropsychiatric ailments. However, two of the medical reports that were submitted in support of Coria's claim, those of Doctors Klein and Ghander, appear in no way relevant to Coria's alleged medical problems.

Ophthalmologist Klein submitted a report (signed by Dr. Scannapiego) based on an eye examination performed on Coria in May, 1978. In that report Coria was diagnosed as suffering from chronic conjunctivitis and in the doctor's opinion, Coria was 8 percent totally disabled as a result of exposure to dust, gases and fumes at work. Dr. Klein also found that Coria's vision was 20/20, and that his eyes were normal in every other respect. Apart from the fact that Dr. Klein's findings bear little relation to Coria's claim for disability benefits (which recites internal, neurological, orthopedic, and neuropsychiatric problems), the report apparently was also inaccurate. In

reviewing Coria's medical and work-related history, Dr. Klein stated that Coria was a "59 year old male," when, in fact, Coria was 47 years old at the time of the examination. In addition, although the record indicates that Coria worked for two years as a chemical operator at U.S. Pipe Foundry, Dr. Klein recounted in his report that the job lasted for "approximately one year."

Coria also submitted the medical findings of Dr. Ghander, an otolaryngologist. Dr. Ghander concluded that Coria suffered from a 40 percent hearing loss in both ears, and diagnosed bilateral hearing impairment and rhinosinusitis. Dr. Ghander estimated that Coria suffered permanent disability of seven and one-half percent of partial total. However, like the report of Dr. Klein, Dr. Ghander's findings with regard to Coria's hearing are unrelated to Coria's claim for disability, and thus could have been properly ignored by the reviewing Administrative Law Judge.

As far as the reports of the other physicians are concerned, had the Administrative Law Judge stated in his opinion that he had read and evaluated the doctors' findings, but recognized their lack of substance and thus placed little weight on their reports, I doubt that we would now be remanding for further proceedings.[1] In this regard, I do not believe that we should blind ourselves to the fact that some of the doctors who examined Coria filed reports that bear a striking resemblance to reports which they have filed for other examinees. This regrettable circumstance has been recognized not only by Administrative Law Judges, see, e.g., *Glover v. Heckler*, No. 84–5337 (App. at 11) (Barlow, ALJ), but by at least one judge in the District of New Jersey. See *Morrison v. Schweiker*, Nos. 79–1962 & 81–1526 (D.N.J. April 5, 1982) (Debevoise, J.). It is difficult to determine how many Social Security claimants have been the subject of medical examinations and reports of this quality and character since every panel of judges does not sit on every social security disability case. What is apparent to me, however, from even my limited experience with these types of reports, is that Coria's counsel uses the same doctors to support each of their client's claims.

In many instances, the doctors' reports have little relevance to the claimant's alleged disability, and often look as if they are carbon copies of other examinations which are unrelated to the particular claimant seeking disability status. For example, after Dr. Pollock's neuropsychiatric examination of Coria, he concluded that Coria suffered from "[n]eurological residuals of exposure to noxious fumes, dust and loud noise and traumatic anxiety psychoneurosis, also right sciatic neuritis, attributable to accident at work and attributable to exposure at work." Dr. Pollock submitted the identical diagnosis with regard to another disability claimant whose appeal is also before this court, but who, unlike Coria, did not suffer an accident at work. See *Glover v. Heckler*, No. 84–5337 (App. at 111).

I do not say that these similarities may not be coincidental, or may not arise from factually similar circumstances of the various claimants. Nevertheless, the proliferation of such reports can give rise to a suspicion on the part of the court and Administrative Law Judges that the findings (to the extent they are findings) and conclusions reported, are entitled to little, if any, weight.

Accordingly, by joining in the present remand, I do not mean to convey the impression that I am attributing weight or credence to the reports which Coria has submitted. I join in this remand because, as the court holds, an Administrative Law Judge must consider all the evidence and evaluate the medical findings. In this case, the Administrative Law Judge's opinion fails to disclose that this was done.

---

1. I note from the evidence that Coria sees no doctor regularly, takes only aspirin as medication, and is capable of climbing a flight of 15–18 stairs each day.