For the foregoing reasons, we will affirm the District Court's Order of Judgment and Conviction.

**Paulette GRIFFIN, Appellant**

v.

**COMMISSIONER SOCIAL SECURITY.**

No. 07–4368.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 21, 2008.

Filed: Jan. 2, 2009.

Eric J. Fischer, Esq., Elkins Park, PA, for Appellant.

Dina Griffin, Esq., Social Security Administration, Philadelphia, PA, for Commissioner Social Security.

Before: SCIRICA, Chief Judge,
RENDELL, Circuit Judge and
O'CONNOR,* Retired Associate Justice,
U.S. Supreme Court.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

Paulette Griffin seeks review of the Social Security Commissioner's final determination denying her concurrent applications for disability insurance benefits and disabled widow's benefits under Title II of the Social Security Act, 42 U.S.C. § 423, as well as supplemental security income under Title XVI, 42 U.S.C. § 1381a. Griffin's applications were denied at all administrative levels, including an administrative hearing. The District Court affirmed the Commissioner's final determination that Griffin retained the residual functional capacity to perform light work, including her past relevant work, and therefore was not entitled to disability benefits. On appeal, Griffin argues that the Commissioner's determination is unsupported by substantial evidence. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. Finding that substantial evidence supports the Commissioner's determination, we will affirm.

## I. Background

As we write for the benefit of the parties alone, we include only those facts necessary for disposition of this appeal. On March 24, 2004, Paulette Griffin filed concurrent applications for social security disability benefits, noting an inability to work since February 20, 2004. On February 24, 2004, Griffin was admitted to the Albert Einstein Medical Center for chest pain following cocaine use. After cardiac catheterization revealed multi-vessel disease,

doctors performed a coronary bypass. For six years preceding her heart surgery, Griffin worked as a night auditor at a Best Western Hotel. There, Griffin answered the telephone, checked guests in and out of the hotel, and prepared reports of daily receipts. According to Griffin, the job required approximately eight hours of walking and standing, one hour of sitting, and lifting reams of computer paper weighing less than ten pounds.

The Social Security Act grants disability benefits only to those claimants who demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). The Pennsylvania Bureau of Disability denied Griffin's application for benefits, finding that Griffin's medical conditions did not render her incapable of returning to her past work as a night auditor. Griffin requested review of her applications at an administrative hearing before an administrative law judge (ALJ), and supplemented the administrative record with additional medical evidence. The ALJ, considering Griffin's testimony at the hearing as well as all medical evidence in the record, found that Griffin possessed the residual functional capacity to perform light work, including her past relevant work as an auditor and bookkeeper. In accordance with this finding, the ALJ concluded that Griffin was not disabled and thus ineligible for disability benefits. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The Appeals Council denied Griffin's appeal, rendering the ALJ's findings and

---

* Honorable Sandra Day O'Connor, retired Associate Justice of the United States Supreme Court, sitting by designation.

conclusions the final determination of the Social Security Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. The District Court, reviewing pursuant to 42 U.S.C. § 405(g), affirmed.

## II. Discussion

Congress has provided that our review of the Commissioner's determination of disability benefits is for substantial evidence. 42 U.S.C. § 405(g). If supported by substantial evidence in the record, we are bound by the ALJ's findings of fact. *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir.1999). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Id.* (citing *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir.1995)). The ALJ's conclusion that she retains the residual functional capacity for light work, according to Griffin, is unsupported by substantial evidence.

In her applications for disability benefits, Griffin identified her heart attack as a medical impairment limiting her ability to work. Griffin further indicated that this heart condition limits her ability to stand for "any length of time" and prevents her from bending down or lifting anything over ten pounds. (App.63.) Griffin also noted that she has difficulty ascending stairs, and must rest her legs after sitting for a prolonged period of time. (App.85.) The ALJ considered these claims, noting that Griffin's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (App.24.) Rather than base the disability determination solely upon Griffin's heart condition, however, the ALJ properly assessed the specific question of whether her medical impairment imposed functional limitations that precluded her employment as an auditor and bookkeeper. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f) ("Your impairment(s) must prevent you from doing your past relevant work."); *see also Coria v. Heckler,* 750 F.2d 245, 247 (3d Cir.1984) ("[T]he fact that a claimant suffers from a physical impairment does not prove that she is disabled. Disability is present only when the functional limitations imposed by the impairments are so severe as to prevent all substantial gainful activity."). As to this inquiry, the claimant bears the burden of proof.[1] *See Adorno v. Shalala,* 40 F.3d 43, 46 (3d Cir.1994).

On the issue of functional limitations precluding her ability to work, we find, as the ALJ did, that Griffin's proffered evidence is sparse. At the administrative hearing, Griffin testified that memory deficiencies, leg fatigue, and sensitivity to stress preclude her employment as an auditor and bookkeeper.[2] Substantial evi-

---

1. Griffin argues that, given her "advanced age," the burden of proof shifts to the Respondent, and a disability finding is required despite the ALJ's determination that Griffin can sustain light work. (Appellant's Br. at 25–26 (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.06)); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(c) ("However, for individuals of advanced age who can no longer perform vocationally relevant past work and who have a history of unskilled work experience, or who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who have no work experience, the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled."). We find § 202.06 inapplicable here, as the ALJ found that Griffin is able to perform light work, including her past work, rendering a transferability of skills analysis unnecessary.

2. Griffin testified that, "her memory is not as good as it used to be," and that her legs easily fatigue, preventing her from standing, bending, and sitting for prolonged periods of time. (App.329–30.) Griffin also emphasized that she is unable to return to her prior job because of the stressful work environment:

dence sustains the ALJ's rejection of these limitations.

## A. Memory Loss and Leg Fatigue

■ As to memory loss and leg fatigue, the ALJ properly concluded that these conditions did not limit Griffin's ability to perform her past relevant work as an auditor and bookkeeper. As an initial matter, Griffin's memory loss and leg fatigue were not substantiated by medical evidence. Although Griffin complained of headaches and hip and shoulder pain in physical examinations following her surgery, she failed to inform the physicians of any condition involving her legs or memory. (App.290, 292–94.) Further, even if Griffin did experience leg discomfort and memory loss, there is no medical evidence that either condition limited her ability to work as an auditor and bookkeeper. Griffin proffered no medical evidence, for example, that her leg fatigue signals an unsafe cardiac condition; instead, she simply testified that her legs "get tired" because she does not have the strength that she "used to." [3] (App.330.) The ALJ properly concluded that mere fatigue—without more—does not preclude Griffin's employment. Indeed, Griffin adduced no evidence—other than her own testimony—indicating that her leg pain was sufficiently severe to preclude her performing sedentary tasks, including her past relevant work as an auditor and bookkeeper. In any event, the ALJ concluded that Griffin's testimony, unsupported by medical evidence, was not entitled to great weight.[4] (App.24.)

Griffin's other asserted impairment—poor memory—was also properly rejected by the ALJ. In particular, Griffin proffered no medical evidence that bookkeeping or auditing requires high memory function, or that her memory skills would be inadequate for the job. On this sparse record, the ALJ reasonably concluded that

---

Q: Why don't you tell me why you wouldn't be able to do any of those jobs today ... if they were offered to you, is there any reason why you wouldn't be able to do them?

A: Well basically because all of them were really stressful. I had deadlines that I had to meet you know, and it was kind of like a, a stressful situation. ...

Q: And is that the only reason why you couldn't perform that work because of the stress?

A: Well and then you know, just dealing with people, my coworkers. It was always a lot of problems and I mean and dealing with customers, you know, it's, it turned out to be a very stressful situation and I had, you know, I was always tensed up, it was always a problem. ...

(App.328–29.)

3. Citing medical websites, Griffin argues that "'leg complaints' are a common consequence of cardiac bypass surgery." As Griffin cites these websites for the first time on appeal, and the websites were not before the ALJ, such evidence may not be used to argue that the ALJ's decision was not supported by substantial evidence. *See Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir.2001) (citing *Jones*, 954 F.2d at 128).

4. Contrary to Griffin's contention, the ALJ did not rest its disability determination on its own lay medical opinion. Rather, the ALJ made a judgment about the weight to be given to Griffin's testimony, based upon Griffin's failure to proffer medical opinions to support that testimony. Such credibility determinations are the prerogative of an ALJ. *See Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) ("While an administrative law judge is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who testified before him."). In light of the robust administrative record, we find noteworthy the absence of medical evidence substantiating Griffin's alleged symptoms, including leg fatigue and memory loss, and the functional limitations proffered. The ALJ's decision to afford little weight to Griffin's testimony on this issue was thus not unreasonable.

Griffin could resume work as a bookkeeper and auditor.

## B. Sensitivity to Stress

■ We also find that the ALJ properly rejected Griffin's contention that sensitivity to stress precluded her employment as an auditor and bookkeeper. At the administrative hearing, Griffin did not elaborate the nature of her impairment, which could stem from a psychiatric illness or an underlying cardiac condition. The ALJ, which found no evidence of a psychiatric condition, properly rejected the former rationale. As to Griffin's heart condition, the ALJ weighed the medical evidence in the record, including the opinion of Dr. Frank James, Griffin's treating cardiologist, and Dr. Oliver Finch, the state agency physician, and concluded that Griffin's heart condition did not prevent her from returning to her past work. Substantial evidence supports the ALJ's conclusion.

Griffin had undergone a successful cardiac catheterization and coronary artery bypass graft, after which Griffin had not expressed any cardiac complaints. As Griffin recovered from the surgery, cardiovascular stress testing in July 2004 displayed defects in the inferolateral and lateral wall regions, suggesting scarring and constricted blood supply. (App.22, 284.) Nonetheless, check-ups conducted by Dr. James in April and May of 2004 revealed a normal heart rate, normal blood pressure when sitting or standing, and no recurrent angina. (App.23, 236–38.) These results were consistent with Griffin's cardiovascular exam in April of 2004, which, with the exception of a slight systolic ejection murmur, was normal. (App.23, 237.) Dr. Matthew Rusk likewise found no evidence of acute distress in his examination of Griffin in September of 2004. (App.292–96.) An ultrasound performed by Dr. Fairman, a vascular surgeon, in September of 2004 looked "fine," and Griffin was informed that she had no need for another examination until the following year. (App.23, 292–93.) After reviewing this and other medical evidence, Dr. Oliver Finch concluded that Griffin could perform light work, including bookkeeping and auditing.[5] (App.272–79.)

For her contention that she is incapable of performing her duties as a bookkeeper, Griffin relies heavily on Dr. James's opinion. On Griffin's employability assessment form, Dr. James noted that Griffin was "temporarily disabled." (App.114–15.) In an April 2004 letter to Dr. Rusk, Dr. James stated that Griffin "has been unable to work" because of her medical disability. (App.236.) In assessing whether Griffin retained the residual functional capacity return to her past relevant work, the ALJ carefully weighed—and rejected—Dr. James's opinion. First, Dr. James failed to explain *why* Griffin's prior operation precluded performance of sedentary tasks. Instead, Dr. James simply completed a

5. Because we conclude that substantial evidence supports the ALJ's disability determination, we reject Griffin's contention that the ALJ had a duty to receive additional expert testimony, or otherwise further to develop the record. We also reject Griffin's related contention that the ALJ "affirmative[ly] dissau[ded]" Griffin from supplementing the record. (Appellant's Br. at 18–19.) At the administrative hearing, Griffin's counsel inquired whether the ALJ "required further clarification from Dr. James at all." The ALJ responded, "No I don't." (App.337–38.) The ALJ committed no error. As noted, the ALJ was under no duty to supplement the over two hundred pages of medical evidence spanning 1998 to 2005, which confirmed that Griffin was capable of performing light work. The ALJ also did not prohibit or discourage counsel from offering additional evidence and, therefore, did not interfere with Griffin's ability to present evidence counsel perceived as necessary to prevail.

check-list form concerning employability for the Department of Public Welfare. *See Mason v. Shalala,* 994 F.2d 1058, 1065 (3d Cir.1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.").[6] Second, Dr. James's letter to Dr. Rusk also failed to identify any specific functional limitations imposed by Griffin's cardiac condition. Third, and most important for the present analysis, neither James's letter nor the employability assessment form directed Griffin to avoid stress, identified exposure to stress as hazardous to Griffin's health, or indicated that bookkeeping would entail harmful levels of stress.

Despite this, Griffin insists that deference to Dr. James's opinion is obligatory. We disagree. The determination of disability is a conclusion of law for the Commissioner; a physician's statement that a claimant is " 'disabled' or 'unable to work' does not mean that we will determine that [the claimant] is disabled." 20 C.F.R. § 404.1527(e)(1). A treating physician's opinion is only controlling when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substan-

tial evidence in [claimant's] record." 20 C.F.R. § 404.1527(d)(2). Where, as here, the treating physician's opinion is conclusory, lacking explanation, and inconsistent with other medical evidence in the record, the ALJ may choose not to defer to the opinion. *See Jones v. Sullivan,* 954 F.2d 125, 129 (3d Cir.1991).

Here, the ALJ reasonably determined that Dr. James's opinion was inconsistent with other substantial medical evidence in the record. As an initial matter, Dr. James's conclusion was inconsistent with his own treatment notes, which confirmed Griffin's improved, post-operative cardiac function, and inconsistent with other medical evidence in the record, which indicated that Griffin's heart rate and blood pressure were normal. Further, imaging techniques did not reveal an enlarged heart, which would have limited Griffin's ability to exert herself physically. Finally, as part of the evidence inconsistent with Dr. James's opinion, the ALJ considered an assessment completed by Dr. Finch, which, unlike that of Dr. James, addressed the issue of functional limitations. After reviewing the medical evidence in the record, Dr. Finch concluded that Griffin retained the capacity to perform "light work."[7] (App.272–77.) Thus, given this substantial

6. Griffin argues that Dr. James's opinion should be accorded greater weight than a mere check-list form because, although Dr. James's formal opinion did not explain the basis for his conclusion that Griffin was "temporarily disabled," his treatment notes support such a conclusion. We find, as the ALJ did, that Dr. James's treatment notes are inconsistent with his conclusion, *see infra* p. 890–91. Hence, we accord no greater weight to Dr. James's opinion than to an ordinary check-list form completed by a doctor.

We also note that "a decision by any non-governmental agency or any other governmental agency about whether [the claimant is] disabled or blind is based on its rules and is not our decision about whether you are disabled and blind. We must make a disabili-

ty or blindness determination based on social security law." 20 C.F.R. §§ 404.1504, 416.904. Thus, the fact that Griffin may have been deemed disabled for welfare or student loan purposes, a fact that Griffin emphasizes, is not conclusive of whether she is entitled to social security disability benefits. *See Coria v. Heckler,* 750 F.2d at 247 (finding that disability determination by workers' compensation agency is not binding in social security context).

7. Griffin maintains that the ALJ improperly relied on Dr. Finch's conclusions, which she claims were based on an incomplete medical record. However, Dr. Finch reviewed the same documents as Dr. James. In any event, Griffin fails to identify specific medical evidence, obtained after Dr. Finch's evaluation,

evidence indicating that Griffin retained the capacity for light work such as bookkeeping, the ALJ did not err in declining to assign controlling weight to Dr. James's opinion.[8]

Accordingly, we conclude that substantial evidence in the record supports the ALJ's conclusion that Griffin retains the functional capacity to return to her past relevant work.

### III.   Conclusion

For the foregoing reasons, we will AFFIRM the Order of the District Court.

substantiating Griffin's inability to return to her past job as an auditor and bookkeeper.

Griffin also reasons—incorrectly—that Dr. Finch solely considered three aspects of Griffin's cardiac condition: "s/p [status post] MI 2/04 angioplasty[,] abdominal aortic aneurysm, [and] splenic infact," because, in the spaces titled "primary diagnosis" and "secondary diagnosis" on Griffin's Capacity Assessment Form, Dr. Finch solely identified these three issues explicitly. However, the general diagnoses noted on Griffin's Capacity Assessment Form merely summarize her principal ailments, and are not intended to constitute an exhaustive recital of her conditions.

8.   Griffin contends that the opinion of a vocational expert was required to sustain the ALJ's conclusion that Griffin could perform

bookkeeping or auditing tasks.   We disagree. After reviewing Griffin's medical record, Dr. Finch identified her specific functional limitations, including her ability to perform a wide variety of physical tasks, and concluded that she retained the overall capacity to perform light work.   Based on Dr. Finch's findings, and after consulting the *Dictionary of Occupational Titles*, which identified bookkeeping and auditing as sedentary occupations, the ALJ concluded that Griffin could return to her prior employment as a bookkeeper and auditor.   *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00(a) ("The functional capacity to perform a full range of light work includes the functional capacity to perform sedentary as well as light work.").   We find no error in the ALJ's reasoning or conclusion.