**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2744
_____

ROBERTO MORAES,
                              Appellant

v.

COMMISSIONER SOCIAL SECURITY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-14-cv-03040)
District Judge:  Honorable Madeline Cox Arleo
_____

Submitted under Third Circuit LAR 34.1(a)
on February 11, 2016

Before:  FUENTES, KRAUSE, AND ROTH, *Circuit Judges*

(Filed: March 28, 2016)

_____

OPINION[*]

_____

KRAUSE, *Circuit Judge*.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Before this Court is Roberto Moraes's appeal of the Order of the District Court affirming the final decision of the Commissioner of Social Security that denied him Disability Insurance Benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-433. For the reasons set forth below, we will affirm.

**I. Background**

Because we write primarily for the parties, we provide background only as relevant to the issues on appeal. On July 31, 2008, Roberto Moraes, who is now fifty-five years of age, injured his back after falling in the course of his work as a truck driver. Following the accident, Moraes sought treatment from several physicians under a workers' compensation insurance program. One of these physicians, Dr. Alan Wasserman, observed damage to spinal discs in Moraes's neck and back. Another physician, Dr. Warren Bleiweiss, prescribed treatment in the form of lumbar and cervical epidural steroid injections. In February of 2010, Moraes saw another doctor through the worker's compensation insurance program who, according to Moraes, diagnosed him with Parkinson's disease but nevertheless terminated Moraes's treatment.[1]

---

[1] This testimony, provided to the ALJ by Moraes at a hearing on September 6, 2012, R. 44, is corroborated in substantial part by a treatment note from Dr. Carl Giordano that was first made part of the record by the Appeals Council when it denied Moraes's request for review and that Moraes now cites in his brief on appeal. *See* R. 4, 311-14. Because the treatment note itself was not before the ALJ, and in the absence of any argument by Moraes as to good cause for failing to present it to the ALJ, we will not consider the note for purposes of appeal. *Matthews v. Apfel*, 239 F.3d 589, 593-94 (3d Cir. 2001).

2

Shortly thereafter, Moraes traveled to Brazil, where he was born, and underwent two surgeries on his spine and back. He then returned to the United States, filing an application for Disability Insurance Benefits under the SSA on February 9, 2011. In connection with that application, Moraes was seen by several more doctors. At the request of his counsel, he received a psychological evaluation from Dr. Paul Fulford, Ph.D., who reported that Moraes was suffering from an "[a]djustment disorder with mixed emotional features secondary to medical condition." R. 249. Also at the request of his counsel, he was examined by Dr. I. Ahmad and Dr. Cheryl Wong, both of whom concluded he was "totally disabled" as a result of his work-related injury. R. 251, 280. At the request of the Social Security Administration's Disability Determination Services, Moraes received an examination from Dr. Justin Fernando, who indicated that the examination was "nearly normal," although Moraes showed "minor chances" of injury in the cervical and lumbar nerve roots as well as "reduced grip and pinch strength in the left hand and muscle strength having been reduced in the . . . extremities." R. 262. Dr. Fernando's report reflects that he was unable to make a diagnosis of Parkinson's because he did not observe any related symptoms, though "there [was] likelihood that [Moraes] could have had these symptoms in the past." R. 262.

On June 28, 2012, more than a year after Dr. Fernando's examination, Moraes was seen by Dr. Oleg Frank, who found Moraes had some tremors and rigidity consistent with Parkinson's disease and prescribed him medication to treat those symptoms. On

3

September 27, 2012, Moraes was seen by Dr. Dimitrios Giannakidis, who also noted tremors and prescribed medication to treat Parkinson's symptoms.

On the basis of this and other evidence, an Administrative Law Judge ("ALJ") issued a decision on January 31, 2013, concluding that Moraes was not entitled to Disability Insurance Benefits. R. 23. In that decision, the ALJ conducted the five step inquiry used to determine whether a person is disabled within the meaning of the SSA. *See* 20 C.F.R. § 404.1520(a)(4) (2016); *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). First, at step one, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. If so, the disability claim must be denied. If the claim proceeds to step two, the ALJ then determines whether the claimant suffers from a severe impairment. Only if he does will the ALJ proceed to consider at step three whether the impairment or any combination of impairments meets or medically equals a "Listed Impairment," i.e., an impairment presumed severe enough to preclude any gainful work. *See* 20 C.F.R. § 404.1520(d). If so, the claimant is deemed disabled, and no further inquiry is needed. If not, however, the ALJ proceeds to step four and determines whether the claimant retains the residual functional capacity to perform past relevant work. If the claimant retains such capacity, the claim must be denied; otherwise, the ALJ determines at step five whether, in light of that residual functional capacity, as well as the claimant's age, education, and past work experience, jobs that the claimant can perform exist in significant numbers in the national economy. If they do not, the claimant is deemed disabled. If such jobs do exist, however, the disability claim must be denied. The

4

claimant bears the burden of proof at steps one, two, and four, while the agency bears that burden at step five. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).[2]

In this case, the ALJ determined at step one that Moraes was not engaged in substantial gainful activity from July 31, 2008, the alleged date of the onset of disability, through December 31, 2012, the date he last met the insured status requirement for receiving Disability Insurance Benefits. At step two, the ALJ determined that Moraes had the severe impairments of sequelae of the July 2008 work accident, Parkinson's disease, and an adjustment disorder secondary to his medical condition. Turning to step three, the ALJ determined that these impairments, singly or in combination, did not meet or medically equal the severity of any Listed Impairment. Having so concluded, the ALJ proceeded to steps four and five and determined that Moraes had the residual functional capacity "to perform light work" and that even though he could not perform his past relevant work, and taking into account his age and his limited education and English proficiency, Moraes could perform jobs that existed in significant numbers in the national economy. R. 20-22. The ALJ therefore denied Moraes's claim.

Moraes requested review of the ALJ's decision by the Appeals Council, which denied that request on April 11, 2014. Moraes timely filed a civil action in the District

---

[2] Neither party bears the burden of proof at step three, which requires the ALJ to draw a conclusion as to the existence of a Listed Impairment. *See Sykes*, 228 F.3d at 263 n.2.

Court, which affirmed the Commissioner's disability determination. Moraes now appeals.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction to hear this case under 42 U.S.C. § 405(g), and we have jurisdiction under 28 U.S.C. § 1291.

We apply the same standard of review as the District Court, determining whether the Commissioner's final decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009) (quoting *Plummer*, 186 F.3d at 427). The substantial evidence standard is a deferential one, prohibiting the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012) (quoting *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001)).

## III. Discussion

Moraes sets forth four reasons why we must conclude that the ALJ erred such that her decision was not supported by substantial evidence. None of these reasons gives us occasion to conclude the ALJ erred, and we will therefore affirm the District Court.

First, Moraes argues remand is warranted because the ALJ did not consider all the evidence, namely the medical records from Moraes's treatment in Brazil and the report of Dr. Cheryl Wong. *See Fargnoli*, 247 F.3d at 42 (noting the ALJ must "consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law"); *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981) ("The ALJ has a duty to hear and evaluate all relevant evidence . . . ."). We disagree.

The record reflects that the ALJ did, in fact, consider the Brazilian medical reports. During a hearing on September 6, 2012, the ALJ retained an interpreter to translate the Brazilian reports into English and read them into the record. Moraes contends that the ALJ erred by not sending the reports out to be transcribed into English but can point to no requirement that the ALJ do so. Although the Social Security Administration's Hearings, Appeals and Litigation Law Manual (HALLEX) provides that the record in a civil action for review of a final Social Security decision "must include an English translation of any document that contains a language other than English," § I-4-1-54, that provision does not, by its terms, apply at the hearing level—and, in any event, as an internal manual, HALLEX does not have the force of law, *see Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (per curiam) (stating that the Social Security Administration's Claims Manual does not have the force of law); *Lowry v. Barnhart*, 329 F.3d 1019, 1023 (9th Cir. 2003). Furthermore, the ALJ's decision demonstrates that she considered the surgeries described in the Brazilian records in conducting her analysis: She specifically

7

noted at step two the effect on Moraes's condition of those surgeries. For these reasons, we cannot conclude the ALJ failed to consider that evidence.

The record also reflects that the ALJ considered Dr. Wong's report, concluding that her opinion would receive no weight because it was requested by Moraes for the purpose of determining whether he was entitled to workers' compensation. Moraes argues that although the ALJ could discount Dr. Wong's opinion on that basis, the ALJ could not also "entirely discount" her findings. Appellant's Br. 19; *see Coria v. Heckler*, 750 F.2d 245, 247-48 (3d Cir. 1984) (noting that because of the "different statutory tests for disability" involved, an ALJ may disregard conclusions, but not necessarily findings, in physician's reports prepared for purposes of worker's compensation). While Moraes correctly articulates the law on this point, we nevertheless conclude that, in these circumstances, remand is not required. The ALJ stated only that she gave Dr. Wong's *opinion*, not her findings, no weight for the reason that it was prepared for purposes of a worker's compensation determination. R. 21. Furthermore, although the ALJ's decision does not expressly cite the portion of Dr. Wong's report that discusses her findings as to Moraes's medical condition, there is no indication in the decision that the ALJ wholly rejected those findings; indeed, they are consistent with the ALJ's determination at step two that Moraes suffered from the severe impairments of sequelae of his work injury and an adjustment disorder. *See Fargnoli*, 247 F.3d at 43 (stating ALJ "must give some indication of the evidence that he *rejects* and his reason(s) for discounting that evidence" (emphasis added)). In addition, Dr. Wong's findings appear to have little, if any,

8

additional probative value when considered alongside the medical findings of Dr.

Fulford, Dr. Ahmad, and Dr. Fernando specifically cited by the ALJ. *See Johnson v.

Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008) (noting there is "no authority for

the proposition that an ALJ must cite all evidence a claimant presents"); *Fargnoli*, 247

F.3d at 42 ("[W]e do not expect the ALJ to make reference to every relevant treatment

note . . . ."). For these reasons, the ALJ was not required to expressly mention those

findings. In the absence of any indication to the contrary in the record, we cannot

conclude that the ALJ improperly disregarded relevant evidence.

Second, Moraes contends that the ALJ did not properly consider whether his

impairments in combination are medically equivalent to a Listed Impairment and asserts

that the ALJ should have called an expert to shed light on this question. The record

reflects, however, that the ALJ specifically concluded that Moraes "did not have an

impairment or combination of impairments that met or medically equaled the severity" of

any Listed Impairment. R. 19. Based on the evidence presented, we have no reason to

doubt that the ALJ considered the impairments in combination. *Cf. Diaz*, 577 F.3d at

503-05 (concluding that the ALJ failed to consider impairments in combination where the

ALJ did not mention an impairment identified at step two in step three analysis). Nor

was the ALJ required to call a medical expert to determine whether the evidence

established that Moraes suffered from a Listed Impairment. The Social Security

Administration has ruled that, in the absence of new evidence, an ALJ "must obtain an

updated medical opinion from a medical expert" only when, in the ALJ's opinion, a

judgment that a claimant's impairments are equivalent to a Listed Impairment may be reasonable. SSR 96-6p, 1996 WL 374180, at *3-4 (July 2, 1996). Having expressed no such opinion, the ALJ was not required to call an expert.

Third, Moraes asserts that the ALJ erred in discounting his testimony that his Parkinson's symptoms have worsened over the past six months. Moraes contends that in doing so, the ALJ failed to take into account the progressive nature of Parkinson's disease. Even accepting this contention as true, however, we could not conclude that the ALJ erred. In making critical determinations as to the credibility of disability claimants, ALJs are not required to give controlling weight to testimony that may be supported by medical literature, but not by the medical evidence presented in the case at hand. As 20 C.F.R. § 404.1529(c)(4) explains, an ALJ "evaluate[s] [a claimant's] statements in relation to the objective medical evidence and other evidence." In considering Moraes's testimony that his condition has worsened recently, the ALJ observed that "there is nothing in the medical documentation in the file to support" that testimony and, for that reason, she gave it "little weight." R. 21. This explanation is entirely consistent with the ALJ's duties when evaluating the severity of a claimant's impairments. *See Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("Allegations of pain and other subjective symptoms must be supported by objective medical evidence."). In light of the lack of medical evidence in the record for various of Moraes's statements regarding the severity of his symptoms, we cannot conclude that the ALJ erred in affording those statements little weight.

Fourth, Moraes argues that the ALJ improperly concluded that there are a significant number of jobs in the national economy that he can perform. Specifically, he contends that the ALJ's finding that "he can use his hands for gross and fine movement frequently but not continuously" is not supported by substantial evidence, and for this reason, the determination based on that finding that there are jobs he can perform was erroneous. R. 20. In essence, then, Moraes challenges not the ALJ's step five determination, but the ALJ's assessment of his residual functional capacity at step four—a step at which Moraes bore the burden of proof. This challenge must also fail. Moraes's primary contention on this point is simply that he "is not able to use his hands frequently." Appellant's Br. 29. In support of her contrary conclusion, the ALJ noted that Moraes has been prescribed medication for Parkinson's, but also noted the medical evidence in the record indicating no signs of neurological deficit other than "reduced grip and pinch strength in the left hand and muscle strength having been reduced in the upper and lower extremities." R. 21. She further stated that Moraes's identified limitations were "accommodated" in her residual functional capacity determination. R. 21. In sum, substantial evidence supports the ALJ's conclusion that Moraes can use his hands frequently and, consequently, that there are jobs in significant numbers in the national economy that Moraes can perform.

**IV. Conclusion**

For the reasons stated above, we will affirm the Order of the District Court upholding the Commissioner's disability determination.