JACOB P. HART, UNITED STATES MAGISTRATE JUDGE
Sheri Sprouse brought this action under 42 USC § 405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB"). She has filed a Request for Review to which the Commissioner has responded. Both parties have filed supplemental letter briefs, which have also been considered. As below, I will deny Sprouse's Request for Review, and affirm the decision of the ALJ.
I. Factual and Procedural Background
Sprouse was born on May 1, 1984. Record at 252. She completed high school. Record at 281. In the past, she worked for short periods as a caregiver for a special needs child, a retail cashier, and a daycare provider. Record at 281. On May 4, 2012, Sprouse filed applications for DIB and Supplemental Security Income ("SSI"). Record at 252, 259. In them, she alleged disability since January 8, 2008, on the basis of epilepsy and seizures. Record at 280.
Sprouse's applications for benefits were initially denied. Record at 164, 179. On reconsideration, however, she was awarded SSI benefits as of May 4, 2012, the date of her application. Record at 184. Nevertheless, Sprouse's claim for DIB was denied once again, on the basis that she had not demonstrated disability on or before September 30, 2010, the date she was last *545 insured for this benefit. Record at 180, 181.
On December 24, 2013, Sprouse requested a hearing de novo before an Administrative Law Judge ("ALJ") as to the denial of DIB. Record at 202. A hearing was held on October 2, 2015. Record at 37. On March 2, 2016, however, the ALJ issued a written decision denying DIB. Record at 19. The Appeals Counsel denied Sprouse's request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner. Record at 1. Sprouse then filed this action.
II. Legal Standards
The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g) ; Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) ; Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986) ; Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, supra, at 401, 91 S.Ct. 1420 ; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987) ; Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).
To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. § 423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:
(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.
20 CFR § 404.1520 (references to other regulations omitted).
III. The ALJ's Decision and Sprouse's Request for Review
As above, the ALJ's decision was limited to whether Sprouse had demonstrated that she was disabled between January 8, 2008 - her claimed disabled date - and September 30, 2010 - the date she was last insured under DIB. Record at 22-3. The ALJ found that, during this period, Sprouse suffered from the severe impairments of epilepsy, obesity, and degenerative joint disease. Record at 24. However, he found that none of these impairments, *546 and no combination of them, met or medically equaled a listed impairment. Record at 25.
The ALJ determined that Sprouse retained the residual functional capacity ("RFC") to engage in sedentary work with the following limitations:
[T]he option to stand and stretch every 20 minutes; never climb ladders or crawl; no more than occasionally reach above the shoulder with the right [arm]; no more than frequently handle or finger with the right; and no exposure to hazards, such as moving mechanical parts, electrical shock, or unprotected heights, or to noise above a moderate level.
Record at 26.
Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ determined that, before September 30, 2010, Sprouse could have worked as a surveillance system monitor, a call out operator, or a charge account clerk. Record at 30. He decided, therefore, that Sprouse was not disabled before that date.
In her Request for Review, Sprouse maintains that the ALJ wrongly assessed the medical evidence, and failed to credit her testimony. In her supplementary letter, she also argues that she is entitled to remand for a hearing before a properly appointed ALJ, under Lucia v. SEC, --- U.S. ----, 138 S.Ct. 2044, 201 L.Ed.2d 464 (2018).
IV. Discussion
A. The Medical Evidence
1. Sprouse's Seizures in the Relevant Period
Before turning to Sprouse's specific arguments, I will discuss the evidence in general regarding Sprouse's medical condition in the relevant period. Unquestionably, Sprouse suffered from epilepsy at that time. In 2009 her seizures were frequent and severe. In 2008 and 2010, however, they were well controlled with medication.
Sprouse experienced grand mal seizures on March 14, June 26, November 25, and December 9, 2009. Record at 504, 523, 551 and 575. Each of these required emergency medical care. The June event was actually "two witnessed seizures back to back." Record at 561. As a result of her March 14, 2009, seizure, Sprouse vomited blood she had swallowed, and required the wiring and reimplantation of two broken teeth. Record at 589, 601. The June and November seizures also resulted in chipped and cracked teeth. Record at 529, 561. The December, 2009, seizure occurred when Sprouse was driving. Record at 504.
During the December, March, and June, 2009, emergency room treatment, Sprouse was noted to have been compliant with antiseizure medication. Record at 504, 562, 587. In the November 25, 2009, records, it was noted that Sprouse had not taken her medication that morning, and had drunk "a little" alcohol the night before, but that she was otherwise compliant with her medication. Record at 529. The ALJ did not fail to discuss all of this evidence. Record at 28.
If this situation had persisted for a year or more, remand to the Commissioner with instructions to award Sprouse DIB for at least a closed period would be appropriate. However, the seizures took place within a ten-month period. As the Commissioner has noted, there are no medical records evidencing any seizures in 2008 or in 2010.
Sprouse notes in her Memorandum of Law that she sought treatment with her general practitioner on June 16, 2010, for back and foot pain after falling downstairs. Record at 469. However, the pertinent doctor's note does not mention a seizure, and there is no proof of emergency treatment at that time, as she had with her 2009 grand mal seizures. Id. The next mention *547 of a seizure was in a March 28, 2011, medical note. Record at 452. By that time, Sprouse's last insured date had long passed. Therefore, the evidence regarding the frequency and severity of Sprouse's seizures do not demonstrate error by the ALJ.
2. Dr. Obuz
Vedat Obuz, MD, Sprouse's general practitioner submitted a medical report dated May 8, 2012. Record at 389. In it, he diagnosed Sprouse with a seizure disorder, and indicated that he saw her "as needed," with the last visit on October 7, 2011. Id. He indicated that he was not able to provide an opinion on Sprouse's ability to do "work-related activities." Record at 390.
Dr. Obuz also submitted a letter dated April 24, 2013, in which he stated:
I am writing this letter for Sheri whom I have been treating [for the] last 14 years. She has Epilepsy, Grand Mal and Mal mixed type that has been affecting her life tremendously. Sheri has had seizures at job sites several times and has been fired. Unfortunately, she has not been able to [be] controlled with medications.
Record at 424
Finally, Dr. Obuz completed a Seizure Impairment Questionnaire on September 30, 2015. Record at 498. He described Sprouse's seizure disorder as refractory to treatment. Id. He indicated that Sprouse had one to two seizures per month, each of which was followed by one or two weeks of fatigue and "foggy brain." Record at 499-500. He also specified that Sprouse's symptoms were "frequently" severe enough to interfere with her attention and concentration. Record at 501.
In this questionnaire, Dr. Obuz indicated that Sprouse was incapable of even low stress work, writing in: "We tried low stress jobs and all of them fired after witnessed seizures at work!!!" Id. In response to the question: "In your best medical opinion, what is the earliest date that the description of symptoms and limitations in this questionnaire applies?", Dr. Obuz wrote: "Since age 16." Record at 502.
The ALJ did not find Dr. Obuz's submissions to be relevant to Sprouse's condition in the period at issue. Record at 28. As to the questionnaire, he wrote: "Although [Dr. Obuz] indicated he had been treating claimant since 1997 or 1999, he did not indicate that his opinions related back to the period from January 8, 2008, through September 30, 2010. Further, there are no treating records to corroborate the same during the relevant period." Record at 29.
In fact, as Sprouse points out, Dr. Obuz indicated that the limitations applied since Sprouse was sixteen. Record at 502. However, despite the ALJ's inaccuracy in describing the contents of the 2015 questionnaire, he was justified in finding that the treatment records did not corroborate this. As discussed above, medicine appeared to be effective in preventing seizures in 2008 and 2010. Also, although the file contains a letter from a daycare center discharging Sprouse because she had two seizures at work, this happened in 2012, and not prior to Sprouse's last insured date for DIB. Record at 251.
Sprouse also makes the general argument that the RFC assessment was not supported by any specific medical evidence, so that "the only logical conclusion is that [the ALJ] impermissibly interpreted the raw medical data into the RFC." Plaintiff's Memorandum at 15. However, the ALJ explained that he primarily relied upon the medical records reflecting the timing and frequency of Sprouse's seizures.[1] Record at 29. This was not "raw *548 medical data" that an ALJ would be unable to interpret for himself.
B. Sprouse's Testimony
Essentially making the same argument from a different angle, Sprouse argues that the ALJ's credibility analysis was inadequate for relying upon the treatment records pertaining to her seizures in deciding that her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. Record at 27. However, he does not explain why it would not be logical to rely upon such evidence.
Sprouse's testimony about the frequency of her seizures was, in fact, somewhat confusing. She testified that she had seizures from three to four times a month between 2008 and 2012. Record at 59. Her counsel asked: "So would you go to a hospital? What would you do after you had a seizure back then?"Id. Sprouse responded: "I would go to the hospital to get treatment or if I had a seizure outside, people would call the ambulance for me so I could receive treatment." Id.
The ALJ later confirmed this testimony, asking: "I think you also said that when you have one of these also three to four times a month for the kind of seizure that would require hospitalization?" Record at 65. Sprouse replied: "Yes." Id. The ALJ then suggested that counsel ensure she had obtained all relevant records: "I mean there certainly are some records that indicate treatment from seizure, but I don't recall seeing that kind of volume of records. So I'm just wondering if there's more to be had in that respect as well." Id.
At the end of the hearing, the ALJ said to counsel:
I have no idea what success you might have in getting it, but it's certainly - I mean if we're having three trips a month to work through a seizure ... going back to '08 on the seizures ... I would think there would be quite a bit more medical evidence available. So I'm going to give you 30 days to figure that out. Okay?
Record at 76. Counsel replied: "Okay. Thank you." Id.
However, the record as it now stands does not reflect anything close to this frequency of medical treatment, even in 2009. On this record, the ALJ was entitled to find Sprouse's testimony as to the frequency and severity of her seizures in the relevant period less than fully credible.
C. Lucia v. SEC
In Lucia v. Securities & Exchange Commission, --- U.S. ----, 138 S.Ct. 2044, 201 L.Ed.2d 464 (2018), the United States Supreme Court ruled in favor of a plaintiff who argued that the ALJ who heard his case at the SEC was appointed by a method which did not conform to the Appointments Clause of the United States Constitution. The Lucia court found that, because the plaintiff had raised a "timely challenge" on this basis in his agency appeal, he was entitled to relief in the form of a hearing before a different ALJ who had been appropriately appointed. 138 S.Ct. at 2055.
Sprouse argues that Lucia applies to the Social Security Administration, and that his ALJ had not been appropriately appointed. He also argues that a "timely challenge" in the Social Security context does not require that the issue be raised before the agency. He cites *549 Sims v. Apfel, 530 U.S. 103, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000), in which the United States Supreme Court held that issues raised in an appeal to a federal court of a denial of benefits need not have been exhausted by raising them before the Social Security Appeals Council. In the Report and Recommendation issued in this District in Muhammed v. Berryhill, this argument was accepted, and remand of a Social Security case recommended. Civ. A. No. 18-172, Report and Recommendation of November 2, 2018, Docketed as Document No. 25. The matter remains pending before the District Court Judge.
Nevertheless, the Sims argument has been rejected by many courts, which have ruled that a Lucia challenge must be raised before the ALJ, even if not before the Appeals Council. Velasquez v. Berryhill, Civ. A. No. 17-17740, 2018 WL 6920457 (E.D. La. December 17, 218) ; Abbington v. Berryhill, Civ. A. N. 1:17-552-N, 2018 WL 6571208 at *5 (S.D. Ala. Dec. 13, 2018) ; Pearson v. Berryhill, Case No. 17-4031-SAC, 2018 WL 6436092 at *4 (D. Kan. Dec. 7, 2018) ; Willis v. Commissioner of Social Security, Case No. 1:18-cv-158, 2018 WL 6381066 at **2-3 (S.D. Oh. Dec. 6, 2018) ; Stearns v. Berryhill, No. C 17-2031 LTS, 2018 WL 4380984 at **4-5 (N.D. Iowa Sep. 14, 2018).
Other courts have declined to remand cases for a new hearing where no Appointments Clause challenge was made in the administrative proceeding, without citing Sims. Britt v. Berryhill, 1:18cv-0030, 2018 WL 6268211 at *2 (W.D.N.C. Nov. 30, 2018) ; Hugues v. Berryhill, CV-17-3892-JPR, 2018 WL 3239835 (C.D. Cal. July 2, 2018) ; Faulkner v. Commissioner of Social Security, 1:17-cv-01197-STA-egb, 2018 WL 6059403 (W.D. Tenn. Nov. 19, 2018) ; Page v. Commissioner of Social Security, 344 F.Supp.3d 902 (E.D. Mich. 2018) ; Davidson v. Commissioner of Social Security, No. 2:16-cv-00102, 2018 WL 4680327 (M.D. Tenn. Sep. 28, 2018). In fact, it does not appear that a claimant in any court has obtained remand under Lucia.
Of course, none of the Social Security cases cited here are binding in this matter. In Abbington, however, the District Court for the Northern District of Alabama provided a persuasive explanation of its position that exhaustion of an Appointments Clause challenge before the ALJ is required. As in all of the Social Security cases rejecting the Sims argument, the Abbington court pointed out that Sims expressly noted that it was not deciding "[w]hether a claimant must exhaust issues before the ALJ." 530 U.S. at 107, 120 S.Ct. 2080. However, the Abbington court also pointed out that the regulations require a claimant to "notify the administrative law judge at [the] earliest opportunity" if she objects to that ALJ conducting the hearing. 20 CFR § 404.940.[2]
The Abbington court also differentiated this type of a challenge from that presented in Sims:
Unlike the cursory form request for Appeals Council review examined in Sims, which "strongly suggest[ed] that the Council does not depend much, if at all, on claimants to identify issues for review[,]" [ Sims at] 530 U.S. at 112, 120 S.Ct. 2080, a request for an ALJ hearing requires the claimant to provide, inter alia , "the reasons [the claimant] disagree[s] with the previous determination or decision" and a "statement of additional evidence to be submitted ..." 20 CFR § 404.933(a)(2)-(3). Unlike the "plenary review" exercised by the Appeals Council, which might even review portions of a decision with which a claimant agrees, generally "[t]he issues *550 before the administrative law judge include all the issues brought out in the initial, reconsidered or revised determination that were not decided entirely in [the claimant's] favor[,]" Id. § 404.946(a), which can hardly be expected to include a constitutional challenge to the ALJ's authority.
2018 WL 6571208 at *5-6.
In other words, unlike in the proceedings before the Appeals Council (at least as they were construed in Sims ), an ALJ does depend on the identification of issues by the claimant. Even to the extent that the ALJ can go beyond the issues identified by a claimant, the scope of her review would not ordinarily include an Appointment Clause challenge; therefore, to be present in a case, such a claim must be raised by the claimant before the ALJ.
Finally, the Abbington court noted that, although excusing waiver of an Appointments Clause challenge is appropriate in "rare cases" (citing Freytag v. Commissioner of Internal Revenue, 501 U.S. 868, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) ), "regularly permitting unsuccessful claimants to raise Appointments Clause challenges for the first time on judicial review, especially when the arguments underlying those challenges were available at the administrative level, would 'encourage the practice of "sandbagging": suggesting or permitting, for strategic reasons, that the [adjudicative entity] pursue a certain course, and later - if the outcome is unfavorable - claiming that the course followed was reversible error.' Freytag, 501 U.S. at 895, 111 S.Ct. 2631 (Scalia, J., concurring in part and concurring in the judgment)." 2018 WL 6571208 at *7.
I am persuaded by the Abbington decision, and by the decisions of all other courts to have considered the issue, to find that Sprouse is not entitled to a new hearing on the basis of Lucia.
V. Conclusion
In accordance with the above discussion, I conclude that the decision of the ALJ must be affirmed, and judgment entered in favor of the Commissioner.

The ALJ also explained that he found Sprouse to require additional limitations because of her obesity, her testimony of right-sided limitations, and her complaints of pain resulting from her falls. Record at 29.

The exception to this rule is that an ALJ is to withdraw on his or her own initiative where prejudice or interest is at issue. 20 CFR § 404.940.